**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee - Cross-
Appellant,

v.

RYAN GAUVIN,

    Defendant-Appellant - Cross-
Appellee.

Nos. 97-2328, 97-2363

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-96-709-MV)

Judith A. Rosenstein, Assistant Federal Public Defender, for Defendant-Appellant
- Cross-Appellee.

Kathleen Bliss, Assistant United States Attorney, for Plaintiff-Appellee - Cross-
Appellant.

Before **PORFILIO** , **McWILLIAMS** , and **HENRY** , Circuit Judges.

**HENRY** , Circuit Judge.

    Mr. Gauvin was convicted by a jury for assault with a dangerous weapon in

Indian Country, in violation of 18 U.S.C. §§ 1153, 113(a)(3), and assault on a

federal officer, in violation of 18 U.S.C. § 111(b). Mr. Gauvin made a motion for judgment of acquittal or alternatively for a new trial. The motion was denied and Mr. Gauvin was sentenced to 37 months in prison followed by three years of supervised release. The sentence reflects a downward adjustment in the sentencing guidelines for acceptance of responsibility and a departure for exceptional family circumstances.

Mr. Gauvin appeals the conviction, and the government cross-appeals the sentencing. We have jurisdiction to hear both appeals under 28 U.S.C. § 1291. We affirm the district court on all matters.

I.

Mr. Gauvin was driving his Ford pickup at 1:15 a.m., drunk. Officer Sandoval, of the New Mexico State Police, noticed his vehicle swerving between lanes on the highway. She engaged her lights and sirens to stop the driver.

Mr. Gauvin accelerated. Officer Sandoval tried to maneuver beside Mr. Gauvin in the left lane. Each time she attempted this he swerved his truck left, forcing her to decelerate to avoid collision. Four miles later, Deputy Sheriff Montoya, of McKinley County, observed the chase and joined in.

Officer Sandoval testified that somewhere in the next few miles, where the road had changed to an undivided two lanes, she saw Mr. Gauvin edge into the opposing lane forcing two oncoming vehicles to swerve into the breakdown lane

2

to avoid his truck. She fired her gun at Mr. Gauvin's rear tire attempting to disable his vehicle. She missed.

Four miles after Sheriff Montoya entered the chase, the road ran into Navajo Nation Indian Reservation. Two Navajo police officers there joined the pursuit. One of them, Officer Redhouse, took the front position ahead of Officer Sandoval. Every time Officer Redhouse tried to get beside Mr. Gauvin, Mr. Gauvin veered into the lane, thwarting the attempt. In one of these attempts to pass, the two vehicles collided, and the truck and Officer Redhouse's car flipped into a ditch. Fortunately, Officer Redhouse was not seriously injured. Mr. Gauvin was treated at a hospital and arrested for assault with a deadly weapon and assault on a federal officer.

Mr. Gauvin appeals his conviction on five grounds: (1) the district court's exclusion of specific testimony offered by Mr. Gauvin's witness was an abuse of discretion; (2) the district court's admission of testimony by government witnesses regarding the credibility of other witnesses was an abuse of discretion; (3) the district court's admonishment of a government witness to answer the defense counsel's question was plain error; (4) the prosecutor's remarks in the closing argument amounted to plain error; and (5) his conviction was based on facts and a theory of the case not presented to the grand jury in violation of the

Fifth Amendment.  Holding that the district court did not err, and that Mr. Gauvin was convicted on facts and a theory presented to the grand jury, we affirm the conviction.

The government cross-appeals challenging the downward adjustment and departure reflected in the thirty-seven month sentence.  Unable to determine that the court abused its discretion in sentencing, we affirm the district court's adjustment and departure.

## II.

### A.  Mr. Gauvin's Appeals from the Conviction.

*1. The district court did not err in excluding testimony, and any error would be harmless.*

In response to police reports on the accident, Mr. Gauvin sought to introduce testimony by Mr. Welch, a teacher at the New Mexico Police Academy, that New Mexico police officers are trained that they should never change their reports.  Mr. Gauvin wished to challenge the validity of the police reports, which indicated Mr. Gauvin had caused the collision.  Mr. Gauvin's accident reconstruction experts had suggested the accident was most likely caused by Officer Redhouse:  Mr. Welch's testimony was thus intended to impeach the continued reliability of the police reports thus bolstering the alternate version of

4

events provided by Mr. Gauvin's accident experts. The district court excluded the evidence upon the prosecution's objections for relevance and that admission would constitute unfair surprise in violation of Federal Rule of Criminal Procedure 16. We review a district court's exclusion of evidence for abuse of discretion, Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995), and affirm.

Mr. Gauvin's accident reconstruction experts had testified that the accident was probably not caused by Mr. Gauvin slamming into Officer Redhouse's car. Among the evidence contrary to their conclusion were the police reports. Mr. Gauvin sought to discredit the reports, by establishing that no matter how clear it became to an officer during trial that his report might be in error, some unofficial policy instructed the officer not to alter his report. The prosecution objected to the admission of Mr. Welch's testimony both on relevance grounds and as unfair surprise under Federal Rule of Criminal Procedure 16. The district court excluded the testimony but from the transcript it is unclear whether it did so on the relevance objection or the Rule 16 objection.

The testimony would have been relevant. Neither 18 U.S.C. § 111 nor 18 U.S.C. § 113 define assault. However, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." United States v. Turley, 352 U.S. 407, 411 (1957). Assault is traditionally defined as "an

5

attempted battery" or as "placing another in reasonable apprehension of a battery." See Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, § 7.16 (1986). This circuit adopted this definition when interpreting another federal assault statute. See U.S. v. Calderon, 655 F.2d 1037, 1038 (10th Cir. 1981).

In light of that definition, Mr. Gauvin's guilt could be established either by showing he caused the crash, or by showing he swerved his car in a manner placing the officers in reasonable apprehension of battery. Therefore, Mr. Gauvin's defense necessitated (among other things) two showings: (1) he did not cause the accident, and (2) he did not swerve toward Officer Redhouse's car. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The police reports indicate that Mr. Gauvin caused the accident. Mr. Welch's testimony would have challenged the continued validity of the police reports, thus weakening the evidence indicating Mr. Gauvin had caused the accident. Whether Mr. Gauvin caused the accident is not dispositive of, but is relevant to determining, whether Mr. Gauvin is guilty of assault. The evidence should not have been excluded on the relevance objection.

As to the second objection, Rule 16(b)(1)(C) requires disclosure in some

6

cases of expert testimony at the discovery phase. In response to the Rule 16 objection, Mr. Gauvin argues that the testimony is based on experience, not expertise. This argument ignores the breadth of the category "expert" under both the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. Federal Rule of Evidence 702 is "broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge." Fed. R. Evid. 702 advisory committee notes. The advisory committee notes to Rule 16 state that the type of expert testimony captured by the rule is broadly construed in line with the broad definition in Federal Rule of Evidence 702. See Fed. R. Crim. P. 16, advisory committee notes (1993 Amendment). Mr. Welch's testimony as to the existence of an unofficial policy of inflexibility, based on his work as a teacher at the Police Academy, qualifies as "expert" under 702 and is subject to the limitations under Rule 16.

Finally, even were this testimony improperly excluded, the error would have been harmless. Mr. Gauvin could have been convicted on the basis of his swerving toward Officer Redhouse's car. The evidence is sufficient to uphold such a conviction and therefore we would not find prejudice in this alleged error.

*2. The district court did not err in admitting challenged testimony.*

7

Mr. Gauvin alleges error in the district court's admission of testimony by Officer Doty that, in making his reports at the scene of the accident, he interviews witnesses, including "impartial witnesses" and police officers. Rec. vol. IV, at 307. Mr. Gauvin also finds error in the admission of testimony by Officer Segotta, Officer Sandoval's supervisor, that he found nothing suggesting to him an improper motive in Officer Sandoval's discharging her firearm.

The government argues, contrary to Mr. Gauvin, that these objections were not properly preserved and thus we should review only for plain error. We need not resolve that contention, however, because even reviewed for abuse of discretion, as the decision would be were the objection preserved, the decision was not error.

Mr. Gauvin first objects to Officer Doty's testimony – specifically his response to the question, "why you have to interview witnesses," in which he stated, "We consider different types of witnesses. The impartial eyewitness or eyewitness of [sic] police officer is to me a better information." Id. Defense counsel objected to the adjective "impartial," and while the judge refused to strike the word, she did immediately instruct the jury that impartiality is an issue "that you determine and only you determine." Id.

As Officer Doty was not even referring to a specific witness in answer to the question, but instead was describing in the abstract the hypothetical type of

8

witness he seeks, it was not error to allow use of the adjective "impartial."

Furthermore, had there been any error, it would have been cured by the immediate jury instruction.

Mr. Gauvin also objects to testimony by Officer Segotta. Officer Segotta, Officer Sandoval's superior, testified on redirect examination that he found no improper motive underlying her filed report. Mr. Gauvin asserts this testimony improperly vouched for the credibility of another government witness, namely, Officer Sandoval. But Mr. Gauvin's attorney had asked on cross-examination whether Officer Segotta "talk[ed] personally to Officer Sandoval to question her about anything she wrote in her report?" Rec. vol. IV, at 401. The prosecution's question was thus properly asked as Mr. Gauvin's lawyer had previously opened the door to this line of questioning. See United States v. Primrose, 718 F.2d 1484, 1493 (10th Cir. 1983) (trial court did not abuse its discretion in finding "proper redirect because defense counsel had opened the door on cross").

The trial court did not abuse its discretion or commit plain error in admitting the challenged testimony of either Officer Doty or Officer Segotta.

*3. The district court did not commit plain error in admonishing a government witness to answer defense counsel's questions.*

During trial, defense counsel questioned Officer Sandoval as to the circumstances that existed when she fired her gun. When counsel did not believe

9

Officer Sandoval had satisfactorily answered the question, he asked the question again.  The prosecution objected to defense counsel's tone of voice, and the district court sustained the objection.  The district court went on to comment:

> I think this will help.  I think the witness is attempting to try to answer your questions, but let me request, perhaps, Officer Sandoval, that if you can answer a question with a yes or no, if you could begin your answer with a yes or a no.  If you believe that you need to explain your answer, you will always be given an opportunity to explain it, but it might help us all out if you could just answer it first with a yes or a no if it is possible to do so.

Rec. vol. III, at 146.

Mr. Gauvin contends this comment was reversible error because it undermined the defense strategy of making Officer Sandoval look evasive and thus undermining her credibility.  We disagree.  The district court's comment was a completely proper exercise of authority under Federal Rules of Evidence 611 ("The court shall exercise reasonable control over the mode and order of interrogating witnesses . . . .") and 614 ("The court may interrogate witnesses . . . .").

*4.  The prosecutor's closing argument did not amount to plain error.*

We review a prosecutor's remarks during closing argument (not objected to) for plain error and will reverse "only to correct particularly egregious errors . . . ."  United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986) (citing United States v. Young, 470 U.S. 1, 14-15 (1985).

10

In Hooks, the prosecutor said in closing: "There should be no question in your mind that the defendant possessed phencyclidine. He knew it was in there. He had to know it was in there. " Id. at 1533. In Mr. Gauvin's case the prosecutor said: "Generally, at this point the government asks you to take this evidence and return a verdict [of] guilty on both counts. But in this situation, the evidence compels you to return a verdict of guilty." Rec. vol. V, at 582. In Hooks, the Court ruled that "the prosecutor did nothing more than argue to the jury that, on the basis of the government's evidence, the jury should find that appellant knowingly possessed PCP." 780 F.2d at 1534. Likewise, the comments in the instant case are of the same nature and are not plain error.

Mr. Gauvin also objects to the prosecutor's characterization, in closing argument, of one expert's testimony as stating, "alcohol merely makes one uninhibited about things that they would have done in the first place or done anyway." Rec. vol. V, at 580. The expert had testified, "I don't think that [alcohol] makes people do things that they might not ordinarily do. I think it just reduces their inhibitions to performing." Rec. vol. V, at 550. The characterization of testimony is correct. Furthermore, any prejudice possibly resulting from flaws in the paraphrase does not amount to plain error.

We need not conduct a cumulative error analysis as requested by the

11

defendant. A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). Having found no errors, harmless or otherwise, we are left with nothing to aggregate.

*5. There was no Fifth Amendment violation as Mr. Gauvin was convicted on the basis of facts and a theory of the case presented to the grand jury.*

Mr. Gauvin claims that the evidence presented to the grand jury would only permit his being indicted on the basis of the actual collision, i.e., ramming his truck into Officer Redhouse's car. He contends he was convicted for swerving conduct *prior* to the alleged ramming, and thus convicted of a crime not presented to the grand jury. Assuming he was convicted of swerving conduct prior to the alleged ramming, the indictment is not so narrow as Gauvin describes.

"A constructive amendment of an indictment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" United States v. Hornung, 848 F.2d 1040, 1046 (10th Cir. 1988) (quoting United States v. Hathaway, 798

12

F.2d 902, 910 (6th Cir. 1986)).

The grand jury indicted Mr. Gauvin for assault with a dangerous weapon and assault of a federal officer. The first charge requires proof of: (1) assault (2) with a dangerous weapon (3) with intent to do bodily harm. See 18 U.S.C. § 113(a)(3). The second charge requires proof of: (1) forcible assault, resistance, opposition, impediment, intimidation, or interference (2) of a federal officer (3) engaged in the performance of official duties. See 18 U.S.C. § 111(b). Either conviction could stand, without reliance on the collision, merely on the evidence of Mr. Gauvin's having swerved his car to block approaching officers.

FBI Agent Calles testified to the grand jury that "each time [the police] tried to position their vehicles to institute the stop, Mr. Gauvin's pickup truck swerved. And, in order to avoid collision [the police] had to veer off the roadway. . . ." Aplt. Br. Sealed Addendum, at 5. This testimony supports an indictment for intentional assault absent any evidence of the collision itself. There is nothing so dramatic in this case as a "modif[ication of the] essential elements of the offense charged." Hornung , 848 F.2d at 1046. Mr. Gauvin's Fifth Amendment rights were not violated.

## B. The Government's Cross-Appeals from the Sentence.

The government raises two issues on cross-appeal. First, the government

13

contends the district court erred in finding acceptance of responsibility. Second, the government argues the district court erred in granting a downward departure for exceptional family circumstances. Holding the district court erred in neither sentencing decision, we affirm.

1.      *The district court did not err in granting a downward adjustment for acceptance of responsibility.*

If "the defendant clearly demonstrates acceptance of responsibility for his offense," the district court grants a two offense-level downward adjustment. USSG §3E1.1(a). Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard. United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997), cert denied, 118 S.Ct. 726 (1998). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." USSG §3E1.1, comment. (n.5).

The district court found Mr. Gauvin accepted responsibility for his crime notwithstanding the fact that Mr. Gauvin put the government to its burden of trial. The Sentencing Commission recognized that the acceptance of responsibility guideline was "not intended to apply to a defendant that puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, *and only then* admits guilt and expresses remorse." USSG §3E1.1,

14

comment. (n.2) (emphasis added). It continues, "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. . . . [A] determination that a defendant [who exercised his constitutional right to a trial] has accepted responsibility will be based primarily upon pre-trial statements and conduct." Id.

At the sentencing hearing, the judge found Mr. Gauvin's conduct demonstrated acceptance of responsibility. Rec. vol. VII, at 54. After review of the record we hold that the district court's factual determination that Mr. Gauvin "understands the seriousness of [his crime] and accepts responsibility for his role," Rec. vol. VII, at 8, was not clearly erroneous.

The district court considered whether Mr. Gauvin's contention of an essential element of the offenses should preclude application of the guideline. It ruled that "Mr. Gauvin is entitled to pursue the theory that he did all these things [on which the charges were based], but the one thing he didn't do is try to use his car to hurt the officers. That should not preclude him from acceptance of responsibility." Id. at 9. We agree.

Our decision rests in part on the fact that Mr. Gauvin went to trial only to contest the legal element of intent. The Sentencing Commission has indicated that the guideline should not apply to "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true . . . ."

15

USSG §3E1.1, comment. (n.1(a)). However, the Commission notes that it may apply where the defendant "challenge[s] . . . the applicability of a statute to his conduct." Id., comment. (n.2). Mr. Gauvin admitted to all the conduct with which he was charged. He simply disputed whether his acknowledged factual state of mind met the legal criteria of intent to harm or cause apprehension.

While a jury disagreed with Mr. Gauvin's defense that he lacked the requisite intent to commit the crime, that does not undermine the good faith in which the district court found this defense was asserted. See Rec. vol. VII, at 8-9. Here, Mr. Gauvin argued that he did not intend, while drunk and scared, to cause injury to others. Further, he contended that his drunkenness rendered him incapable of forming the requisite mens rea. This defense – essentially a challenge to the applicability of the statute to his conduct, see USSG §3E1.1, comment. (n.2) – does not as a matter of law preclude application of the guideline. Although we recognize that such adjustments are "rare," id., and might not have reached the same decision, in light of the deference afforded the sentencing judge, we hold the district court did not err in granting a downward departure for acceptance of responsibility.

2. *The district court did not err in departing downward for exceptional family circumstances.*

The district court also found that Mr. Gauvin merited a three offense-level

downward departure because of exceptional family circumstances.  In conducting our review, we must acknowledge, " Koon made explicit that in promulgating the Guidelines, Congress did not intend to vest in appellate courts wide-ranging authority over district court sentencing decisions."  United States v. Collins , 122 F.3d 1297, 1302 (10th Cir. 1997)  (quotation omitted).  "Rather, Congress meant to establish[] limited appellate review, where  *district courts retain much of their traditional sentencing discretion* ."  Id. (emphasis supplied) (quotations omitted).

It is our role to "review departures under a unitary abuse-of-discretion standard which 'includes review to determine that the discretion [of the district court] was not guided by erroneous legal conclusions.'"  Id. (quoting Koon v. United States , 518 U.S. 81, 100 (1996)).  More specifically, we must make four determinations:  (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon are sufficient to remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.  See id. at 1303.

First, the Guidelines tell us that family circumstances and responsibilities are a permissible but discouraged factor.  See USSG §5H1.6.  Therefore, a district court may depart based on family circumstances "only if the factor is present to

an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon v. United States , 518 U.S. 81, 94 (1996). This requirement blends the first two factors for appellate review. Therefore, on the second determination we question whether Mr. Gauvin's family circumstances remove him from the applicable Guideline heartland. We give the district court "substantial deference" in resolving "whether a particular defendant is within the heartland given all the facts of the case." Collins , 122 F.3d at 1313 (quotations omitted). We hold the district court did not err in concluding Mr. Gauvin's crime was outside the heartland.

"The Sentencing Guidelines allow for a downward departure in the atypical case where a guideline literally applies but where the defendant's conduct significantly differs from the norm or the 'heartland' of cases." United States v. Eaton , 31 F.3d 789, 793 (9th Cir. 1994). This is a most difficult inquiry. What family circumstances are exceptional to a degree more than those in the heartland cases? This court has described a case *within* the heartland (reversing the departure) as: "[the defendant was a] single mother of child who, in defendant's absence, would be cared for by an alleged alcohol and drug abuser." United States v. Archuletta , 128 F.3d 1446, 1451 n.9 (10th Cir. 1997) (describing United States v. Harrison , 970 F.2d 444, 447-48 (8th Cir. 1992)). Thus, that scenario is *not* exceptional enough to merit departure. In the same decision, this court

18

described a case found to be *outside* the heartland (affirming the departure) as: "defendant had special relationship with his lover's son, who had psychological and behavior problems and might regress in absence of defendant." Id. at 1451 n.10 (describing United States v. Sclamo, 997 F.2d 970, 972-74 (1st Cir. 1993)). Thus, that scenario *was* exceptional enough to merit departure. [1]

It may be, as Tolstoy suggested, that happy families are all alike and every unhappy family is unhappy in its own way – but how to distinguish between unhappys? "[W]hen is a case so 'unusual' that it is a candidate for departure? The Supreme Court in Koon made clear that this question is largely for the district court to answer." Collins, 122 F.3d at 1302. For example, is the case of a defendant's imprisonment resulting in her children being cared for by a drug-abuser better or worse that the instant case, where the defendant's imprisonment leaves his children almost completely unsupervised? That is, is a drug-abusing supervisor better than no supervisor at all? And, what sort of "special relationship" with a lover's son is required for the imprisonment to become too great a hardship? If, instead of an impending threat of *relapse* into psychological problems, there were no psychological problems, but just a threat of depression,

---

[1] Of course, we do not mean to suggest the Archuletta panel was condoning that outcome – the example is used simply to highlight the impossibility of arriving at sensible distinctions between the facts presented in a family circumstances inquiry.

19

would that be better or worse?

The Seventh Circuit "noted that a district court judge may have a better feel for what is or is not unusual or extraordinary and that when a district court clearly explains the basis for its finding of an extraordinary family circumstance, that finding is entitled to considerable respect on appeal." United States v. Owens, 145 F.3d 923, 928 (7th Cir. 1998) (quotations omitted). Here, the district judge clearly explained the basis for finding the circumstances were extraordinary, and unable to find error, we defer to that judgment.

On the third determination, we hold the facts support the departure. Mr. Gauvin is the father and supporter of four young children and his wife. Rec. vol. VII, at 55. To replace his income, since his incarceration, his wife has worked 14 hours a day, 55 miles from home. Id. at 56. Thus, she is away from home sixteen hours a day. The children are financially barely provided for, and parentally unprovided for. Id. at 55-56. As a result, Navajo Housing Authority is conducting an investigation to determine whether Mrs. Gauvin will be permitted continued custody of her children. Id. at 25-26, 56. Mrs. Gauvin is also at risk of losing her car for failure to make payments. Id. at 24, 57-58. Should she lose her car, she will be unable to continue her two jobs and thus the children will be entirely without support. Id. at 57-58. Further, the Gauvins have no extended family to take custody of the children or assist financially should Mrs. Gauvin fail

20

in either capacity.  Id. at 58.  In sum, the district judge concluded, making explicit findings, that she had "never seen a combination of these factors."  Id. at 58.

The facts of this case are exceptional to a degree to merit departure even in a discouraged category.  We reiterate, "[b]ecause the Supreme Court believes that in [the area of downward departures] experience is the best teacher, it instructs that district courts, which have the most, are to be deferred to by appellate courts, which have much less."  United States v. Galante, 111 F.3d 1029, 1031 (2d Cir. 1997).  In United States v. Galante, the Second Circuit affirmed a downward departure for exceptional family circumstances that resulted in a reduction in the offense level from 23 to 10.  Id. at 1032.  Many facts in that case were similar to those present in the instant case.  The defendant was the primary earner of the family.  He had a wife and two children.  Without his income the family risked losing their subsidized housing.  Each of these factors is present here to some degree.  There are differences between the cases.  Mr. Gauvin has five dependents, and Mr. Galante had only three.  Mr. Gauvin has a record of domestic abuse, Mr. Galante did not.  The differences between the cases certainly continue.  And the differences are not conclusive either way – in fact, that is the point.  The difficulty, if not impossibility, of conducting a systematic weighing of such detailed facts at the appellate level is the reason district courts are granted such broad discretion in making the determination.  Accordingly, we cannot say the

21

exceptional family circumstances found by the district court are so unsupported by the record as to constitute an abuse of discretion.

Finally, on the fourth determination, we hold the degree of departure reasonable. The district court departed only three levels downward, from 20 to 17, and sentenced Mr. Gauvin to 37 months.    See Rec. vol. VII, at 60-61. The three-level departure reduced Mr. Gauvin's sentence from four years and three months to three years and a month. While not insignificant, this departure does not seem unreasonable. The judge further justified the degree of departure on the basis that it made Mr. Gauvin eligible for the Shock Incarceration Program pursuant to section 5F1.7 of the Sentencing Guidelines. The judge recommended Mr. Gauvin for admission to the six-month, intensive, military-style labor-incarceration program. Completion of the program would put Mr. Gauvin in a position to work for his employer, while confined to a half-way house under close-supervision for non-work hours. Thus, Mr. Gauvin could be punished, watched, and prohibited and prevented from using drugs or alcohol, all while minimizing the impact on his four children.

We caution that we do not rule that Mr. Gauvin was entitled to the challenged departure as a matter of law. To the contrary, we hold only that the district court has the qualifications for making the departure decision in the greatest measure, and the appellate court should not lightly supplant the judgment.

We simply cannot say the facts provide so little support for the court's decision as to make that decision an abuse of discretion.

For the aforementioned reasons, we AFFIRM Mr. Gauvin's conviction and sentencing in all respects.