**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENCH CIRCUIT**

**JUL 28 1999**

**PATRICK FISHER**
**Clerk**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 98-2165 |
| ALBERTO SANCHEZ, | (D.C. No. 97-CR-528) |
| Defendant-Appellant. | (D.N.M.) |
| | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 98-2260 |
| ALEJANDRO BONNE-TORRES, | (D.C. No. 97-CR-528) |
| Defendant-Appellant. | (D.N.M.) |

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Each Defendant in this case presented separate briefing and oral argument to the court. Because the cases arise out of a common nucleus of fact, however, we address both appeals in one opinion.

Defendants Alberto Sanchez and Alejandro Bonne-Torrez appeal jury verdicts finding them guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. As grounds for reversal, Defendant Sanchez asserts that: (1) the district court erroneously ruled that the government could cross-examine his state court lawyer about the specific charge on which she represented him; (2) the district court erroneously tendered an "Allen instruction" to the jury; (3) the evidence was insufficient to support his conviction; (4) cumulative errors violated his right to a fair trial; and (5) the district court erred in calculating the amount of drugs attributable to him for sentencing purposes. Defendant Bonne-Torrez raises two issues on appeal: (1) whether the district court erred by tendering the "Allen instruction" and (2) whether the evidence was sufficient to sustain his conspiracy conviction. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## I.

In June 1997, the Drug Enforcement Agency Metropolitan Drug Task Force in Albuquerque, New Mexico, received complaints that certain individuals were trafficking drugs at the Budget 8 Motel. In response, the task force dispatched several undercover officers to investigate. On June 10, 1997, Officer James Cardwell and Agent Mike Webster went to the Budget 8 Motel to attempt to purchase crack cocaine. Upon arrival at the motel, Officer Cardwell approached an individual he later identified as Defendant

2

Alberto Sanchez and attempted to buy crack cocaine. With Agent Webster observing, Officer Cardwell asked Sanchez if "he had any rocks?" Sanchez asked Officer Cardwell how much he wanted. Officer Cardwell responded "two hundred worth." Sanchez turned to another man, later identified as Defendant Alejandro Bonne-Torrez, and held up two fingers. Bonne-Torrez said "no." The officers moved on, making no further attempt to purchase crack from Sanchez or Bonne-Torrez.

On June 11, 1999, Officer Cardwell returned alone to the Budget 8 Motel. Officer Cardwell asked Sanchez if he had any rocks. Sanchez walked off and spoke with Bonne-Torrez, who returned and asked the officer what he needed. Officer Cardwell responded that he needed some crack. Bonne-Torrez told Officer Cardwell to "step into my office." At that point, Officer Cardwell followed Bonne-Torrez into a motel room. Bonne-Torrez again asked the officer what he needed. After receiving a similar response, Bonne-Torrez stepped outside and spoke to Sanchez in Spanish. Bonne-Torrez returned and began talking to Officer Cardwell about his control over the drug sales in the area. Bonne-Torrez told Officer Cardwell: "I am the godfather of this place, I control all the crack sold here, and at the Luna Lodge." Pointing at Sanchez, Bonne-Torrez stated "yesterday . . . I told my people not to sell to you. I thought you were narcs because your friend was so big. After you left, I asked all my people if they had seen you around as a narc and they said no. I decided then that you were not cops."

Bonne-Torrez handed Officer Cardwell five pieces of crack cocaine. Officer

3

Cardwell told him that he needed more. Bonne-Torrez told him to "be patient, I have more rocks than you can smoke in a lifetime. . . . We can do business, I am expecting an ounce from some black guys out in California." Officer Cardwell handed Bonne-Torrez $100 for the crack and left the motel.

On June 16, 1997, Officers Cardwell and Webster returned to the Budget 8 Motel to purchase more crack. As the officers approached the room where Officer Cardwell had purchased crack from Bonne-Torrez, Sanchez and an unknown female called them to a different room. The female asked the officers what they wanted. Officer Cardwell responded "crack." The female asked how much. Officer Cardwell responded "two hundred." Sanchez told the officers to come back in twenty minutes. Officer Cardwell asked if Bonne-Torrez was around. Sanchez stated that he was not.

The officers returned in approximately thirty minutes. Sanchez gave them ten pieces of crack cocaine. Officer Cardwell asked if he had more, $100 worth. Sanchez left the room and returned with five more pieces of crack. The officers paid Sanchez and left the room. Laboratory results showed that the fifteen pieces of crack cocaine weighed three grams.

Authorities subsequently arrested and charged Sanchez and Bonne-Torrez with, inter alia, conspiracy to distribute cocaine base and distribution of cocaine base, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 841(a)(1). Sanchez and Bonne-Torrez pled not guilty to the charges. The court tried the co-defendants in a single proceeding.

4

After hearing the evidence, the jury returned a verdict finding Sanchez guilty of conspiracy, but not guilty of distribution. The jury returned a verdict finding Bonne-Torrez guilty of both distribution of cocaine base and conspiracy to distribute cocaine base.

## II. Defendant Alberto Sanchez

### A.

Throughout these proceedings, Defendant Sanchez has argued that this is a case of mistaken identity. In identifying Sanchez, the officers who purchased crack from him stated that he wore his hair "high and tight" or shaved closely on the sides and a little longer on the top. Sanchez claims that during the time of the investigation his hair was approximately five inches long and braided into "corn rows." Sanchez proposed to call a lawyer who, in June 1997, represented him on state charges involving crack cocaine to testify that during the relevant time period, his hair was long and braided into "corn rows." The government informed the district court that it intended to cross-examine the lawyer and inquire about the subject matter of the representation to show "bias." Sanchez objected to the government's proposed line of questioning. The district court overruled the objection and stated that the government could ask about the representation. Faced with the prospect of the jury finding out that he was charged in state court with distributing crack, Sanchez chose not to call the witness.

Sanchez contends that the district court erred in ruling that the government could

ask the lawyer about the subject matter of the representation. Specifically, he argues that the district court erroneously prevented him from calling a witness he describes as "qualitatively better" than the other witnesses that testified about his hair style. In response, the government argues that to the extent the district court erred by ruling that the government could inquire about Sanchez' state court charges, the error was harmless. We agree that to the extent the district court committed error, the error was harmless.

In determining whether a district court's error is harmless, we consider: (1) the importance of the witness' testimony to Sanchez' case; (2) whether the testimony would have been cumulative; (3) the presence of evidence corroborating or contradicting the proposed witness' testimony on material points; and (4) the overall strength of the prosecution's case. See United States v. Bindley, 157 F.3d 1235, 1240 (10th Cir. 1998).

After reviewing the record, we are not persuaded that the district court's ruling had a substantial influence on the outcome of the case. Officers Cardwell and Webster testified that Sanchez wore his hair high and tight in June 1997. Four other witnesses, however, testified that Sanchez' hair was long during the same period. Sanchez' ex-girlfriend testified that his hair was approximately five inches long in June 1997. She further testified that during that period, she often braided Sanchez' hair into "corn rows." Sanchez' employer testified that in June 1997, Sanchez had long hair braided into "corn rows." The owner of the Budget 8 Motel testified that he had seen Sanchez around the motel and that he had "a lot of curly hair." Finally, Sanchez took the stand and testified

6

that his hair was long and braided in "corn rows." In light of this testimony, it is clear that the lawyer's testimony would have been cumulative. Consequently, any error in the district court's ruling was harmless.

B.

Following closing argument, the court instructed the jury and the jury began deliberations. After deliberating approximately four hours, the jury sent a note to the district court which stated: "We are having difficulty arriving at a unanimous verdict on some counts. What do you suggest?" Over defense counsel's objection, the district court tendered an "Allen" instruction urging the jury to work toward a unanimous verdict, but cautioning the jurors not to give up their individual judgments about the case. Approximately one hour and twenty-five minutes later, the jury returned a verdict finding Sanchez guilty of conspiracy, but not guilty of distribution.

Sanchez argues that the Allen instruction impermissibly coerced the jury and, therefore, denied him of his constitutional right to an impartial jury. In doing so, Sanchez does not quarrel with the language of the instruction. Instead, he contends that the timing of the instruction impermissibly coerced the jury into returning a guilty verdict.

"We review whether an Allen instruction was erroneously given on a case-by-case basis with a view towards determining whether the instruction had a coercive effect on the jury." United States v. Rodriguez-Mejia, 20 F.3d 1090, 1091 (10th Cir. 1994). In determining whether the instruction was coercive, we consider: (1) the language of the

7

instruction; (2) its incorporation with other instructions; and (3) the timing of the instruction. United States v. Porter, 881 F.2d 878, 888 (10th Cir. 1989). Because Sanchez does not challenge the language of the instruction, we focus on the second two factors.

This circuit has urged caution in the use of "Allen" instructions. E.g. Rodriguez-Mejia, 20 F.3d at 1091. While this court has often approved the use of the instruction, we have stated that the preferred procedure is to tender an "Allen" instruction at the same time as the other instructions. Id. It is not, however, per se error to tender an "Allen" instruction after deliberations have begun and the jury notifies the court that it is having trouble reaching a unanimous verdict. Id. at 1092.

Considering the context in which the "Allen" instruction was given in this case, we are not persuaded that the jury felt coerced. The instruction was clearly aimed at the whole jury, not just the minority, and it instructed the jurors not to set aside their individual beliefs about the case. The time between the instruction and the jury's return with a verdict does not indicate coercion. See e.g., United States v. Ellzey, 936 F.2d 492, 501 n.2 (10th Cir. 1991) (no coercion where jury deliberated four hours before receiving instruction and one and one-half hours after receiving instruction). Furthermore, although the jurors indicated they were having difficulty reaching a verdict, nothing in the record suggests that they were hopelessly deadlocked. See Porter, 888 F.2d at 889. Accordingly, we hold the district court did not commit error by tendering the Allen

8

instruction to the jury.

C.

Sanchez next argues that the evidence at trial was insufficient to show that he conspired to distribute crack cocaine. Specifically, Sanchez asserts that insufficient evidence was introduced as to whether Officer Cardwell and Agent Webster correctly identified him.

We review de novo the sufficiency of the evidence. United States v. Floyd, 81 F.3d 1517, 1525 (10th Cir. 1996). In doing so, we inquire "whether, taking the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. United States v. Williamson, 53 F.3d 1500, 1514 (10th Cir. 1995).

Viewing the evidence in a light most favorable to the government, we conclude the evidence is sufficient to support Sanchez' conviction. At trial, several witnesses testified that Sanchez wore his hair long and braided into "corn rows" at the time Officer Cardwell and Agent Webster bought crack cocaine from him. By contrast, the officers testified that Sanchez wore his hair "high and tight." Despite this discrepancy, the officers testified that Sanchez was the individual from whom they purchased crack. They further testified that he facilitated another sale made by Bonne-Torrez. Although we realize that Sanchez thoroughly impeached the officers' testimony through witnesses and effective cross-

9

examination, credibility calls are the province of the jury.  See United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997).  Thus, viewing the evidence in a light most favorable to the government, we conclude sufficient evidence existed regarding Sanchez' identity.

D.

At trial, the government introduced evidence showing that Sanchez personally distributed three grams of crack cocaine.  This evidence was the government's proof that Sanchez distributed crack cocaine as Count III of the indictment alleged.  The jury acquitted Sanchez on this count.  As part of their proof regarding Count I, which charged Sanchez with conspiracy to distribute crack cocaine, the government introduced evidence that Sanchez conspired to distribute .48 grams of crack cocaine.  The jury found Sanchez guilty of the charges in Count I.  At sentencing, the district court determined that Sanchez' sentence should be calculated based on the entire 3.48 grams.  In other words, the district court included the amount for which he was acquitted as well as the amount for which he was convicted.

In order to include the amount of drugs for which Sanchez was acquitted in its sentencing calculation, the district court was required to, and indeed found, by a preponderance of the evidence, that Sanchez distributed the three grams.  See United States v. Johnston, 146 F.3d 785, 795 (10th Cir. 1998).  Sanchez asserts that the government did not prove, by a preponderance of the evidence, that he distributed three

10

grams as alleged in Count III of the indictment. Therefore, Defendant argues that the district court should have calculated his sentence based only on the amount for which he was convicted, or .48 grams. We disagree.

We review the district court's factual findings concerning the amount of drugs for which Defendant may be held accountable for clear error. United States v. Ortiz, 993 F.2d 204, 207 (10th Cir. 1993). "We will not disturb this finding unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced than an error has been made. Id. We review de novo legal interpretations of the guidelines. Id.

Although the jury did not believe beyond a reasonable doubt that Defendant distributed three grams of crack cocaine, we are not left with a firm conviction that an error has been made. Officer Cardwell testified that Defendant sold him three grams of crack cocaine on June 16, 1997. He was subject to rigorous cross-examination and the district court found his testimony believable. Thus, because the district court's finding is supported by the record, we are not persuaded that it was clearly erroneous.

E.

Finally, Defendant urges reversal on the basis of cumulative error. "A cumulative error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Gavin, 173 F.3d 798, 804 (10th Cir. 1999). In reviewing for

11

cumulative error, we aggregate only actual errors to determine if the errors affected Defendant's substantial rights. United States v. Rivera, 900 F.2d 1462, 1470-71 (10th Cir. 1990) (en banc).

Of the four errors alleged, we have conclusively determined that the district court acted properly in relation to three of them. In regard to Defendant's fourth point of error, that the district court erroneously ruled that the government could ask his state court lawyer about the subject matter of her representation, we assumed error and concluded that to the extent error occurred it was harmless. Reviewing the errors Defendant has alleged in this appeal, we conclude that the effect of any errors in Defendant's trial was slight and did not affect his substantial rights. Accordingly, we deny his request for reversal based on cumulative error.

### III. Defendant Bonne-Torrez

#### A.

Defendant Bonne-Torrez argues that the government produced insufficient evidence at trial to prove that he conspired to distribute crack cocaine. We review Bonne-Torrez' sufficiency claim de novo. In doing so, we examine direct and circumstantial evidence in a light most favorable to the government to determine whether a reasonable jury could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1978); United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996). "In order to conclude the evidence was insufficient, as a matter of law, to support

12

a conviction, we must find that no reasonable juror could have reached the disputed verdict." United States v. Owen, 70 F.3d 1118, 1126 (10th Cir. 1995).

To prove conspiracy, the government was required to demonstrate that: (1) Bonne-Torrez and Sanchez agreed to sell crack cocaine; (2) Bonne-Torrez knew selling crack cocaine was the object of the conspiracy; (3) Bonne-Torrez knowingly and voluntarily became part of the conspiracy; and (4) Bonne-Torrez and Sanchez were interdependent. Ivy, 83 F.3d at 1285. We have carefully reviewed the trial transcripts and entire record in this case. Viewing the evidence in a light most favorable to the government, we conclude that a reasonable juror could believe, beyond a reasonable doubt, that Bonne-Torrez and Sanchez agreed to sell crack cocaine, that Bonne-Torrez knew selling crack cocaine was the object of the conspiracy, that Bonne-Torrez knowingly and voluntarily entered the conspiracy, and that Bonne-Torrez and Sanchez were interdependent. Accordingly, the evidence is sufficient to support Bonne-Torrez' conspiracy conviction.

B.

Bonne-Torrez next argues that the district court impermissibly coerced the jury by tendering the "Allen instruction". In Section II(B) of this opinion, we rejected Defendant Sanchez' challenge to the same instruction. For substantially the same reasons, we reject Bonne-Torrez' challenge as well.

IV.

For the foregoing reasons, we AFFIRM Defendant Sanchez' conviction and

13

sentence.  We likewise AFFIRM Defendant Bonne-Torrez' conviction.

Entered for the Court,


Bobby R. Baldock
Circuit Judge