**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 11, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KALUP ALLEN BORN,

Defendant - Appellant.

No. 24-7011
(D.C. No. 6:21-CR-00174-JFH-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Under the Sentencing Guidelines, a criminal defendant may receive a two-point offense level reduction when he accepts responsibility for his offense. This reduction rewards those who take full responsibility, so a defendant must clearly demonstrate he does so solemnly.

The Sentencing Guidelines also provide the district court discretion to depart from an applicable Guideline range for aggravating or mitigating circumstances for which the Guidelines do not adequately account. In these unusual cases, the sentencing court may depart from the prescribed sentencing range.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Here, Defendant Kalup Allen Born seeks vacatur of his 121-month sentence, arguing that the district court erred in denying him an acceptance of responsibility offense-level reduction and abused its discretion in applying a one-level upward departure.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm on both issues.

I.

In December 2020, the Pontotoc Country Justice Center in Ada, Oklahoma incarcerated Defendant in its segregated disciplinary pod.  Other inmates knew B.J., another prisoner in the pod, as mouthy and disrespectful.  Inmates in this pod get one recreation hour outside of their cell three times a week.  Only one inmate at a time may leave his cell to use his recreation time.

On December 14, 2020, B.J. spent one of his recreation hours meandering in and out of the shower and attempting to flood the pod.  B.J. also "bark[ed] something at the [prison] camera," "flipped somebody off," and walked around the pod naked. Towards the end of his hour, an officer ordered B.J. back to his cell several times, and B.J. refused to comply.  When the officer believed that B.J. finally returned to his cell, the officer allowed Defendant to start his recreation hour.  Unfortunately, B.J. was still in the shower.  When Defendant saw B.J. and asked what he was doing, B.J. yelled at him: "Fuck you, this is—I run this pod, I am God in this place, you can't do shit.  You are a bitch anyways.  I can do whatever . . . ."  B.J. repeated that "he was God" and continued "saying . . . [Defendant's] punk ass [couldn]'t do anything anyways."

2

Defendant became very angry, felt like B.J.'s words were "a slap in the face," and believed that he needed to respond. According to Defendant, if "everybody in the jail sees that [interaction] and you don't do nothing," it would "be bad for you." So when B.J. left the shower and walked towards the pod's common area, Defendant walked up behind B.J. and sucker punched him. B.J. fell to the ground, and Defendant stomped on the back of B.J.'s head until he lost consciousness. Video footage shows Defendant stomped on B.J.'s head twenty-seven times, and that at various points Defendant walked away only to return and resume attacking him. As B.J. laid face-down and unconscious on the floor, Defendant returned to his cell. Five days later, B.J. died of the blunt-force head trauma.

A grand jury in the Eastern District of Oklahoma indicted Defendant for first degree murder in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153. At trial, Defendant testified that he felt like he needed to respond to B.J.'s comments, that he "wasn't thinking," that he "lost control" and that he "wish[ed] it never would have happened." During closing arguments, defense counsel implored the jury to consider the jailhouse dynamics that drove Defendant to react instinctually, and to find Defendant "guilty of voluntary manslaughter" rather than first-degree murder, as his attack happened "in the heat of passion." The jury agreed, convicting Defendant of the lesser-included offense of voluntary manslaughter in violation of 18 U.S.C. §§ 1112, 1151, and 1153.

The district court held a consolidated sentencing hearing and sentenced Defendant for voluntary manslaughter and for his offenses in two other cases. The

Final Presentence Report, adopted by the court during sentencing, calculated a total offense level of 29. When combined with a criminal history category of III, Defendant's Guideline sentence for his manslaughter conviction ranged from 108 to 135 months. The parties discussed two issues related to his voluntary manslaughter sentence: first, whether the court should reduce Defendant's offense level under U.S.S.G. § 3E1.1 for accepting responsibility, and second, whether the court should grant the government's motion for an upward departure based on extreme conduct under § 5K2.8.

After reviewing the parties' arguments, the district court denied Defendant an acceptance of responsibility reduction. The district court also found that Defendant's conduct was "unusually cruel, heinous, brutal, and degrading to the victim," and departed upward one offense-level. Based on Defendant's updated total offense level and his criminal history category, his guideline sentence ranged from 121 to 151 months. The district court ultimately sentenced him to 121 months for manslaughter and a total of 608 months' imprisonment for all three cases.

On appeal, Defendant argues that the district court erred when it did not grant him a reduction for acceptance of responsibility and when it applied a one-level upward departure for extreme conduct. We address each issue in turn.

## II.

Defendant first contends that the district court erred by denying him a two-point acceptance of responsibility reduction under U.S.S.G. § 3E1.1 because he "admitted he caused the victim's significant injuries and death" and challenged only

4

the malice and premeditation elements of his first-degree murder charge.  [ROA Vol. 2 at 60.]

We review the district court's acceptance of responsibility determination for clear error.  United States v. Smith, 100 F.4th 1244, 1250 (10th Cir. 2024) (citing United States v. Amos, 984 F.2d 1067, 1071 (10th Cir. 1993)).  The sentencing court "is uniquely positioned to evaluate each defendant's acceptance of responsibility," so we give its determination great deference.  Id. (citing U.S.S.G. § 3E1.1, comment., n.5).  For this reason, unless that determination "is without foundation," we will not disturb a district court's acceptance of responsibility ruling.  Id. (quoting United States v. Lindsay, 184 F.3d 1138, 1143 (10th Cir. 1999)).

Under § 3E1.1(a), a criminal defendant must "clearly demonstrate[] acceptance of responsibility for his offense" to be eligible for an offense-level reduction.  If he can prove his "recognition and affirmative acceptance of personal responsibility for his criminal conduct," the sentencing court should "decrease the offense level by 2 levels."  United States v. McAlpine, 32 F.3d 484, 489 (10th Cir.), cert. denied, 513 U.S. 1031 (1994) (quoting U.S.S.G § 3E1.1(a)).  Although going to trial "does not automatically preclude a defendant from consideration for such a reduction," the acceptance of responsibility guideline was generally "not intended to apply to a defendant that puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  § 3E1.1 cmt. n.2; see also Smith, 100 F.4th at 1251.

5

We have affirmed the grant of a reduction similar to the one Defendant seeks in United States v. Gauvin, 173 F.3d 798 (10th Cir. 1999). In Gauvin, the defendant "admitted to all the conduct with which he was charged"—assault with a dangerous weapon and assault of a federal officer—and simply disputed whether "his drunkenness [at the time of the offense] rendered him incapable of forming the requisite mens rea." Id. at 806. Although the jury ultimately disagreed with the defendant, finding that he had the requisite mental state, the district court held that the defendant's conduct demonstrated acceptance of responsibility and that he understood the seriousness of his crime, and that he accepted responsibility for his role in the offense. Id. The Gauvin panel stated that although it "might not have reached the same decision" as the district court, "in light of the deference afforded the sentencing judge," the district court did not err in granting a downward departure for acceptance of responsibility. Id.

We have likewise affirmed in United States v. Collins the denial of a reduction similar to the one Defendant seeks. 511 F.3d 1276 (10th Cir. 2008). In Collins, the district court denied an acceptance of responsibility reduction to a defendant who went to trial and argued for conviction on a lesser-included drug offense. Id. at 1281. The Collins defendant, after being stopped by officers, denied his knowledge of the drugs he possessed, attempted to flee from the officers, and accused the officers of planting the drugs on him. Id. at 1280. The defendant, charged with possession of cocaine and marijuana with intent to distribute, offered to plead guilty to the lesser offense of simple possession after counsel "likely advised him that . . . the case

6

against him was overwhelming." Id. The government rejected his offer, and the case proceeded to trial. Id. at 1278. A jury convicted defendant of simple possession, and at sentencing, he argued for an acceptance of responsibility reduction because he offered to plead guilty to the offense for which he was ultimately convicted. Id. at 1279. Considering these facts, the district court concluded the defendant did not deserve a reduction. Id. We observed that the district court could have reasonably concluded that the defendant's admissions at trial establishing the lesser-included offense "were strategic, rather than evidence of true acceptance of responsibility." Id. at 1280–81. We also emphasized how our clear error review could result in seemingly inconsistent results in cases where a district court granted the acceptance of responsibility reduction, like Gauvin, compared to cases, like Collins, where the district court chose to deny the reduction based on similar facts. Id. at 1280.

Here, like in Collins, the district court denied Defendant a § 3E1.1 acceptance of responsibility reduction. Although acknowledging that Defendant exhibited some expressions of remorse at trial, and that "[g]oing to trial does not automatically preclude a defendant from [the benefits of] acceptance of responsibility," the district court relied on § 3E1.1's Application Notes 1 and 2 in finding Defendant failed to clearly demonstrate that he accepted responsibility. Specifically, the district court found that Defendant continued to engage in violent conduct. It noted that under Application Note 1, courts can consider "voluntary termination or withdrawal from criminal conduct or association" and "post-offense rehabilitative efforts" in analyzing whether to apply § 3E.1.1. It found that:

7

[t]here is no evidence of either of those in this situation. Quite the opposite. Defendant incurred further charges for violent conduct after this case—conduct that involved jail contraband as well as violence—and he has not brought to the Court's attention any sort of attempt at rehabilitation. Rather, in Case Number 23-CR-150—offense conduct on April 24, 2023—the Defendant pled guilty to assault with a dangerous weapon with intent to do bodily harm and to possessing contraband in prison after using a metal shank to stab another inmate at least seven times in the head and neck.

The district court also considered Application Note 2 which states, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." It found that here, "Defendant was found guilty of voluntary manslaughter[,] a lesser included offense of the first-degree murder charged in the indictment. He challenged both the factual element of intent and the factual element of malice aforethought."

On appeal, Defendant now argues that because he admitted to the offense of which he was convicted, we should look to Gauvin. He contends he is "far more deserving of the deduction than the defendant in Gauvin" because that defendant did not admit all the elements of his convicted offense, whereas "his counsel specifically implored the jury to convict [Defendant] of voluntary manslaughter." In his eyes, "[n]ot granting [him] a deduction . . . penaliz[es] a person who goes to trial and has the jury agree that a lesser offense is warranted."

In essence, Defendant urges us to depart from our established manner of reviewing these cases and to apply § 3E1.1 more mechanically—such that if a defendant accepts the elements required for the offense of conviction, the district

court commits clear error in denying him an acceptance of responsibility reduction. But our established body of caselaw requires that we give district courts "great deference" in making this factual determination. Smith, 100 F.4th at 1250. Accordingly, we cannot conclude that Defendant admitting all voluntary manslaughter elements necessarily entitled him to the acceptance of responsibility reduction. See id.

The district court determines whether a defendant "clearly demonstrates acceptance of responsibility for his offense," basing its conclusion on several factors including whether the defendant has voluntarily terminated his criminal conduct and whether he has made post-offense rehabilitative efforts. § 3E1.1, Application Note cmt n.1. The district court expressly found that neither factor supported an acceptance of responsibility reduction because he continued to engage in criminal activity. Because the district court's inquiry is fact-intensive, we reverse only for clear error and "the judgment of the district court on this issue is nearly always sustained." United States v. March, 999 F.2d 456, 463 (10th Cir. 1993) (quoting United States v. Whitehead, 912 F.2d 448, 451 (10th Cir. 1990)). Given the district court's factual findings, it did not clearly err in denying Defendant an acceptance of responsibility reduction.

We also reject the Defendant's argument that the district court denied the acceptance-of-responsibility reduction based on a legal error. Defendant argues that the court mistakenly considered the Defendant's challenge to the conviction with which he was charged (first-degree murder) rather than the offense of conviction

9

(voluntary manslaughter).  For this argument, Defendant points to the Guideline commentary, which refers to acceptance of responsibility for the "offense of conviction," not for the charged offense.  See § 3E1.1 comment. n.1.  But it is not clear that the court relied on Defendant's challenge to the first-degree murder charge to deny the acceptance-of-responsibility reduction.  Before mentioning the Defendant's challenge to the first-degree murder charge, the district court explained that it was relying on the absence of evidence that Defendant had voluntarily withdrawn from the crime or engaged in rehabilitative efforts after committing the offense.  Even if we assume for the sake of argument that the district court cannot deny an acceptance of responsibility adjustment when the defendant challenges a charge that results in an acquittal, the record is ambiguous on whether the court relied on Defendant's challenge to the first-degree murder charge, rather than the other factors mentioned, to deny the acceptance of responsibility reduction. When the record is ambiguous about the grounds for a ruling, we cannot presume a legal error. See United States v. Nacchio, 555 F.3d 1234, 1242 (10th Cir. 2009). ("When a district court's language is ambiguous . . . it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion.") (quoting Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 386 (2008)).

In sum, the district court found that Defendant had not clearly accepted responsibility because he continued to engage in criminal conduct and failed to make post-offense rehabilitative efforts.  Given these findings, its determination about whether Defendant accepted responsibility was not "without foundation" and,

10

therefore, not clearly erroneous.  Smith, 100 F.4th at 1250 (quoting Lindsay, 184 F.3d at 1143).  The record, moreover, is ambiguous on whether the district court denied the reduction because of these factual findings or because Defendant challenged his first-degree murder charge.  We thus affirm the district court's § 3E1.1 ruling.

III.

Defendant next raises two challenges to the district court's one-level upward departure for extreme conduct pursuant to U.S.S.G. § 5K2.8.  First, he argues that his Guideline range adequately reflected his offense, and in deciding to depart the district court unreasonably relied on considerations already accounted for by the Guidelines.  According to Defendant, "the conviction was a heat-of-passion voluntary manslaughter," so his conviction and its associated Guidelines already account for "losing control" and engaging in violent behavior.  He maintains that § 5K2.8 applies only to "unusually" brutal offenses, and his was not unusual enough to merit a departure.  And second, he contends that the district court incorrectly found that Defendant's conduct humiliated B.J.

When a district court departs upward, we review a sentencing decision's reasonableness for an abuse of discretion.  United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)); United States v. Robertson, 568 F.3d 1203, 1211 (10th Cir. 2009) (quoting United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215–16 (10th Cir. 2008)).  "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious,

whimsical, or manifestly unreasonable." Huckins, 529 F.3d at 1317 (quoting United States v. Muñoz–Nava, 524 F.3d 1137, 1146 (10th Cir. 2008)). We review a district court's factual findings for clear error. United States v. Todd, 515 F.3d 1128, 1135 (10th Cir. 2008) (citing United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006); United States v. Ortiz, 993 F.2d 204, 207 (10th Cir. 1993)).

Under § 5K2.8, a district court can increase a defendant's sentence above the Guideline range to reflect the nature of the defendant's conduct if the defendant's conduct was "unusually heinous, cruel, brutal, or degrading to the victim." Such extreme conduct includes the "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." § 5K2.8. When reviewing a district court's upward departure, like those imposed pursuant to § 5K2.8, we consider four factors: "(1) whether the district court relied on permissible departure factors, (2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable." Robertson, 568 F.3d at 1211 (citing United States v. Munoz–Tello, 531 F.3d 1174, 1186 (10th Cir. 2008)). We give substantial deference to a district court's determination that the case before it is atypical and therefore justifies a departure. United States v. Proffit, 304 F.3d 1001, 1011 (10th Cir. 2002) (quoting United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997)). Defendant's § 5K2.8 challenges concern the second and third factors, so we do not address factors one and four.

12

Defendant first argues that "losing control" does not distinguish his case from other voluntary manslaughter cases because the voluntary manslaughter Guideline already accounts for an offense committed "in the heat of passion where somebody dies." He argues that "[h]is losing control is what made the offense voluntary manslaughter," so the district court erred in considering his loss of control when it decided to depart.

But Defendant's loss of control is not the only fact that made his offense, in the district court's view, unusual. At sentencing, the district court found that Defendant's actions significantly differed from the norm because "[t]he video surveillance of the homicide played during trial shows . . . Defendant prolonged the victim's pain by stomping on him over 27 times, punching the victim six times, and continuing the assault after the victim stopped protecting himself, including continuing to stomp on the victim's head after he appeared lifeless." The district court concluded that this kind of "prolonged assault demonstrates a gratuitous infliction of injury on a helpless, motionless victim." The district court also found that Defendant "taunt[ed] [B.J.] and mock[ed] him throughout the assault," and later decided to "act[] out the assault to other inmates."

These findings illustrate that the district court did not abuse its discretion in imposing a one-level upward departure. We have upheld a district court's decision to depart pursuant to § 5K2.8 where the district court made specific factual findings demonstrating that the defendant's conduct "was unusually brutal within the universe of voluntary manslaughters." United States v. Checora, 175 F.3d 782, 793 (10th Cir.

13

1999) (affirming the district court's departure determination but remanding for further findings as to the extent of the departure because the court gave no principled reason for departing upwards six levels). Here, the district court listed specific factual considerations that made Defendant's offense atypical: the number of times Defendant stomped on B.J., the fact that Defendant punched B.J. several times while stomping on him, the fact that B.J. appeared helpless and lifeless during the attack, Defendant's taunting and mocking attitude during the attack, and the fact that Defendant later acted out the attack to other inmates.[1] And although all voluntary manslaughter cases necessarily involve a defendant "losing control" in the heat of passion, the district court did not abuse its discretion in finding that Defendant's particular conduct went beyond the heat of passion normally exhibited in a commonplace voluntary manslaughter case. Indeed, the district court specifically stated so.

Defendant then contends that the district court erroneously found that his attack humiliated B.J. Defendant argues this characterization "ignores all of B.J.'s actions caught on surveillance video that immediately preceded the offense." [Opening Br. at 29.] B.J. "spent his entire hour of recreation time using the shower to flood the floor" while "meander[ing] around, naked, yelling at the officer in the

---

[1] Defendant does not dispute these facts; he disputes only whether these facts make his voluntary manslaughter atypical. And as explained below, Defendant disputes whether the attack humiliated B.J. considering B.J.'s conduct towards Defendant before the attack. But Defendant does not dispute the district court's finding that his conduct during the attack involved mocking and taunting.

14

tower," "refus[ing] to go back to his cell," "flip[ing] off the officer," "hid[ing] underneath the stairs," and "curs[ing] at [Defendant]."

Although we do not rubber stamp the district court's departure determination, we recognize that district courts have an "institutional advantage" because they see "so many more Guideline sentences than appellate courts do." United States v. Begaye, 635 F.3d 456, 465 (10th Cir. 2011) (quoting Gall, 552 U.S. at 52). Thus, we give the district court's discretionary decision that Defendant's humiliation of B.J. during the attack justified a departure substantial deference and detect no error. See id. at 463–65. Even if, as Defendant argues, B.J.'s unseemly behavior right before to the attack "negate[d] a belief that [Defendant's] conduct caused B.J. any additional humiliation," § 5K2.8 focuses on whether Defendant's offense was "unusually heinous, cruel, brutal, or degrading to the victim." See generally United States v. Hanson, 264 F.3d 988, 998 (10th Cir. 2001) (affirming the district court's decision to impose an upward departure on Defendant's sentence pursuant to § 5K2.8 regardless of the victim's characteristics). Examples of that conduct include, among other things, "prolonging of pain or humiliation." § 5K2.8. The district court found that "Defendant tortured and degraded the victim," apart from the physical beatings, by "taunting him and mocking him throughout the assault." Given these findings, even if B.J. acted embarrassingly before the attack, the district court's § 5K2.8 departure was not arbitrary, capricious, whimsical, or manifestly unreasonable. Huckins, 529 F.3d at 1317 (quoting Muñoz–Nava, 524 F.3d at 1146).

15

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge