**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David HERRELL, Defendant–
Appellant.**

No. 01–2161.

United States Court of Appeals,
Tenth Circuit.

April 25, 2002.

Before TACHA, Chief Circuit Judge, McWILLIAMS, Circuit Judge, and RUSSELL,* District Judge.

## ORDER AND JUDGMENT **

RUSSELL, District Judge.

Defendant David Herrell was convicted of conspiracy to possess with intent to distribute 10 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count I), and possession with intent to distribute less than 10 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Count III), following a jury trial. On April 12, 2001, Defendant was sentenced to terms of seventy-eight (78) months of imprisonment on both counts, to be served concurrently. Defendant appeals from his conviction and sentence, asserting as error the district court's denial of his motion to suppress, its refusal to instruct the jury on the lesser included offense of possession of a controlled substance and its failure to grant an adjustment to his sentence based upon acceptance of responsibility.

On July 14, 1998, at approximately 10:45 p.m., Otero County Deputy Sheriff

---

* The Honorable David Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Benny House, while having coffee at a truck stop owned by Defendant David Herrell, observed Defendant's appearance to be unusual. According to Deputy House, Defendant's pupils were large, his face was drawn and he appeared fidgety and nervous. Defendant appeared to House to be under the influence of a stimulant. House knew from past conversations with Defendant that Defendant used methamphetamine and he believed that Defendant was under the influence of methamphetamine on that night. Defendant told Deputy House that he was on his way to Atlanta for a vacation with his family. Deputy House observed Defendant leave the truck stop in a brown van which appeared to be packed for a vacation. The van was being driven by Billy Burns, an associate and co-defendant of Defendant Herrell. Defendant Herrell's wife and children were also passengers in the van. The van drove out of Alamogordo to Highway 82 and turned east, towards Atlanta. Because Deputy House had not gotten close enough to Burns to determine whether he was under the influence of any narcotic, Deputy House followed the van a short distance to determine whether Burns was impaired or there were any traffic violations which would give him cause to stop the vehicle. Because he did not observe any traffic violations, he stopped following the van. However, because House was still concerned that Burns may have been driving under the influence of methamphetamine and he knew that Burns and Herrell were under investigation for methamphetamine distribution, House called the Artesia Police Department and told them to be on the lookout for the van. He gave the dispatcher a description of the van and its license plate number, identified its occupants and told the dispatcher that if officers stopped the van they should investigate for methamphet-

amine. The dispatcher relayed this information to Teresa Troublefield, a patrol officer with the Artesia Police Department. Officer Troublefield repeated the information to Milton Menefee, a deputy sheriff with the Eddy County Sheriff's Department, and eventually to several other law enforcement officers.

Officer Troublefield, Deputy Menefee and several other officers waited in downtown Artesia, on Highway 82, for the van to arrive in town. It was their intent to follow it and stop it if they observed any traffic violations and then seek to search the vehicle. At approximately 1:25 a.m. the officers spotted the van entering Artesia and began following it. Although the other officers stopped following the van after a few miles because they did not observe any traffic violations or any other reason to stop the van, Deputy Menefee continued to follow the van beyond the city limits of Artesia and into and through the small community of Riverside. As the van drove through Riverside, Deputy Menefee observed the van twice cross over the double yellow line dividing the highway and then return to its lane of travel. The highway was straight and there was no other traffic in view at the time. The weather was clear and there was no apparent road condition that would have caused the driver of the van to swerve. Deputy Menefee concluded that the driver of the van might be impaired or sleepy, which led to the van drifting or moving over the center lane and into the west-bound lane and that, therefore, he had cause to stop and investigate. Deputy Menefee stopped the van, radioing the dispatcher to advise her what he was doing.

Deputy Menefee approached the driver of the van, Billy Burns, advised that he had violated a traffic regulation by crossing the yellow line and asked him for his driver's license, registration and proof of

insurance. Burns told Deputy Menefee he had lost his license and hadn't yet replaced it. While Deputy Menefee was talking to Mr. Burns, obtaining information so that he could run a check on the status of Burns' license, Officer Troublefield, who was a canine handler, arrived. While Deputy Menefee was on his patrol car radio checking on the status of Burns' license, Officer Troublefield walked her dog, Sir, around the van. Sir, who was trained to detect narcotics, alerted at the rear of the van twice. Officer Troublefield told Deputy Menefee that Sir had alerted. Deputy Menefee then asked Burns for consent to search the van. Burns refused to consent, stating that he did not want to take responsibility for others' luggage and also that it was Herrell, not Burns, who had borrowed the van from its owner. After Deputy Menefee advised Burns that the dog had alerted on the van, Herrell told Burns to sign the consent to search form, which Deputy Menefee read to Burns, but Burns again refused. Deputy Menefee then asked Defendant Herrell to sign the consent to search form, which Herrell did.

After the consent to search form was signed, Officer Troublefield and another officer opened the back of the van and had Sir sniff the luggage and other containers in the back of the van. Sir alerted on a red toolbox. Several items of drug paraphernalia consistent with the use of methamphetamine were in the toolbox. At that point, as Officer Troublefield was about to ask the other van passengers to get out so that she and other officers could search the van interior, April Herrell, Defendant's wife, and three girls got out of the van. April Herrell told Officer Troublefield that the girls needed to go to the bathroom. As April Herrell was getting out of the van, she pulled her purse out of a cabinet inside the van and handed it to one of the girls. Officer Troublefield stated that she would have to search the purse for weap-ons before the girl could take the purse with her across the road. The girl replied that the purse was not hers but her mother's. April Herrell gave Officer Troublefield her consent to search the purse. Inside the purse, at the top, were baggies containing twenty "8–balls" of methamphetamine. April Herrell testified that the baggies did not belong to her and were not for her personal use. The "8–balls" appeared to be packaged for distribution rather than for personal use. Later, law enforcement officers found an additional three 8–balls in a separate compartment at the bottom of April Herrell's purse.

At some point during the stop, Deputy Menefee cited Billy Burns for failing to produce a driver's license on demand and for a violation of N.M. Stat. Ann. § 66–7–317. Defendant Herrell was later charged by criminal complaint with possession with the intent to distribute ten grams or more of methamphetamine and carrying a firearm in relation to a drug trafficking crime, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 924(c)(1). Subsequently, on June 3, 1999, Defendant, April Herrell and William T. "Billy" Burns were indicted in a four count indictment which included the two offenses of which Defendant Herrell was convicted.

Defendant Herrell does not challenge the district court's factual findings in the order denying his motion to suppress. He argues that Deputy Menefee lacked probable cause to stop the van in which he was traveling because "Deputy Menefee can express no viable concern for the safety of the occupants of the Chevy van or any third party based on the observed 'swerve.'" Appellant's Opening Brief at p. 29. In effect, Defendant argues that because there were not grounds to believe that the van's crossing of the center line could not be made with safety, Deputy Menefee did not have a reasonable suspi-

cion that a violation of N.M. Stat. Ann. § 66–7–317(A) (1988) had occurred. To support this argument, Defendant cites *United States v. Borcich*, 460 F.2d 1391 (10th Cir.1972) and *United States v. Gregory*, 79 F.3d 973 (10th Cir.1996). Defendant further asserts that the "be on the lookout" bulletin to Artesia police officers did not provide a basis for the traffic stop because the bulletin itself was not based upon reasonable suspicion of an observed traffic violation or of an articulated suspicion of narcotics activity by the officer issuing the bulletin, i.e., Deputy House. Because the traffic stop was assertedly unconstitutional, all of the evidence recovered during the search of the van should have been suppressed, Defendant asserts.

However, even if this Court concludes that the traffic stop was valid, Defendant argues that the warrantless search of the van was unconstitutional because Defendant's consent to search the van was, under the totality of the circumstances, the product of duress and coercion and not voluntarily given. The circumstances under which Defendant asserts he was "compelled" to sign the consent to search form and which he apparently claims amounted to duress are described by Defendant as follows:

> [T]he Defendant's wife and three children had been removed from the van and were placed on the ground. The children were ages 18, 11 and 3. The time was shortly before 1:30 a.m. and the location of the traffic was near a collection of metal buildings alongside the highway known as Riverside, which hosts no facilities [public restroom]. There were no streetlights or other means of illumination other than police vehicles' headlights and flashing police lights. Neither the Defendant David Herrell nor his family members were free to leave. Additionally, the Defendant David Herrell was informed by Deputy Menefee at the time he was forced to decide on whether or not he would provide consent to search, that he and his family members would be forced to sit alongside the highway until a search warrant could be obtained, a process that did not appear quite speedy.

Appellant's Brief in Chief at p. 35.

When we review an order denying a motion to suppress, "we accept the district court's factual findings unless they are clearly erroneous, and we view the evidence in a light most favorable to the district court's determination." *United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir.2001). We review de novo questions of law, including ultimate determinations of reasonableness under the Fourth Amendment. *See id.; United States v. Gordon*, 173 F.3d 761, 765 (10th Cir.), *cert. denied*, 528 U.S. 886, 120 S.Ct. 205, 145 L.Ed.2d 172 (1999).

■ We find no error in the district court's determination that the initial stop of the van in which Defendant was a passenger was reasonable.[1] A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *See United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir.2001), *citing United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir.1998). A traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either probable cause to believe a traffic violation has occurred or a reasonable articulable suspicion that the motorist in question has violated or is violating any one of the applicable traffic and equipment regula-

---

**1.** Defendant does not challenge on appeal the reasonableness of the duration and scope of the detention following the stop.

tions of the jurisdiction. *United States v. Ozbirn,* 189 F.3d 1194, 1197 (10th Cir. 1999); *United States v. Hunnicutt,* 135 F.3d at 1348. *See Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

 Finding that Deputy Menefee was also "concerned about the condition of the driver as evidenced by the driver's violation" of N.M. Stat. Ann. § 66–7–317, the district court concluded that considering the totality of the circumstances, Deputy Menefee had a reasonable articulable suspicion that a traffic violation had occurred or was occurring. We agree. The fact that Deputy Menefee may have been motivated to seek a basis for stopping the van because of the "be on the lookout" bulletin received from the dispatcher in Artesia does not render the stop unreasonable under the Fourth Amendment; that fact is irrelevant. *See United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir. 1995), *cert. denied,* 518 U.S. 1007, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996) (other subjective motives for stopping vehicle are irrelevant to inquiry of whether officer had reasonable suspicion that a traffic violation has occurred or is occurring). *Accord Whren v. United States,* 517 U.S. 806, 810–19, 116 S.Ct. 1769, 1773–77, 135 L.Ed.2d 89, 96–101 (1996). Conversely, the "be on the lookout" bulletin need not have been supported by probable cause or a reasonable suspicion of an observed traffic violation, as Defendant argues, because Deputy Menefee's stop of the van was not solely based upon the bulletin but on a reasonable articulable suspicion, based upon his own observation of the van twice crossing the center line in the early morning hour,

that a traffic violation had occurred or was occurring.

Defendant argues that Deputy Menefee could not have had a reasonable suspicion that the van had violated N.M. Stat. Ann. § 66–7–317 because a violation of that statute requires both that the vehicle cross the center dividing line and that the driver did not first ascertain that such movement could be made with safety. In effect, he argues that because the van was traveling within the speed limit and there was no traffic that night in the vicinity and specifically no traffic when the van crossed the double yellow line, Deputy Menefee could not have had a reasonable suspicion that the driver of the van didn't ascertain before the van crossed the center line that that movement could be made safely.[2] Defendant relies primarily upon *United States v. Borcich,* 460 F.2d 1391 (10th Cir. 1972) and *United States v. Gregory,* 79 F.3d 973 (10th Cir.1996) in making this argument.

At issue is not whether the van violated N.M. Stat. Ann. § 66–7–317 but whether Deputy Menefee had a reasonable, articulable suspicion that a traffic violation had occurred or was occurring. Not only did Officer Menefee observe the van move onto or cross the center line twice within a short distance, but there was no apparent reason for the movement, suggesting that the movement was not intentional, following the driver's ascertainment that the movement could be made with safety, but was unintentional, suggesting that the driver might be impaired by alcohol or drugs or was sleepy. The time was sometime around 1:30 a.m., suggesting that the

**2.** The logical extension of Defendant's argument is that a law enforcement officer would have probable cause to believe or a reasonable articulable suspicion that a driver had violated a statute like N.M. Stat. § 66–7–317 only when he observed the driver cross over a lane line and collide or nearly collide with another vehicle. Only in such circumstances would there be an objectively observable manifestation of a driver's failure to ascertain, before moving out of his lane, that the move could be made safely.

latter was a reasonable possibility. Indeed, as the district court found, "the officer articulated on the witness stand that he was concerned about whether the driver was impaired by alcohol or drugs or was sleepy, in which case he posed a danger not only to other traffic that might be on the highway but also to the occupants of the vehicle." Memorandum Opinion dated October 29, 1999 at p. 9. There being no other apparent explanation of why the van twice crossed into or over the center lane and into the lane for oncoming traffic and given the time of day, it was reasonable, considering the totality of the circumstances, for Deputy Menefee to conclude that a violation of N.M. Stat. § 66–7–317 and/or a statute prohibiting the operation of a motor vehicle while impaired[3] had occurred or was occurring. *See United States v. Meyer*, 2001 WL 1219394 at *4 (10th Cir. Oct.10, 2001) (No. 01–3022) (distinguishing *United States v. Gregory* on the grounds that the road and weather conditions in *Meyer* were optimal, Meyer drifted across the lane twice, not just once as in *Gregory*, and affirming the district court's conclusion that the troopers had probable cause to stop Meyer's vehicle for an observed violation of Kan. Stat. Ann. § 8–1522).

The cases of *United States v. Borcich*, 460 F.2d 1391 (10th Cir.1972) and *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996) on which Defendant relies are distinguishable. In *Borcich*, this Court did note that crossing the center line was not a traffic violation under the applicable New Mexico statute then in effect, N.M. Stat. Ann. § 64–18–16(a), if the movement could be made with safety but the Court did not specifically address whether the initial traffic stop was reasonable under the Fourth Amendment. The case of *United States v. Gregory* is distinguishable on the ground that the defendant in *Gregory* moved out of his lane only once, did not cross over the center lane line but crossed into the right shoulder emergency lane and was driving on a winding mountain road in windy conditions. This court said in *Gregory* as follows:

We do not find that an isolated incident of a vehicle crossing into the emergency lane of a roadway is a violation of Utah law. This interpretation of Utah law has been followed by the Utah courts. *See e.g., State of Utah v. Bello*, 871 P.2d 584, 586 (Utah App.1994) (a single instance of weaving does not constitute a violation of Utah Code Ann. § 41–6–61(1)). We agree with the Utah court which noted that the statute requires only that the vehicle remain entirely in a single lane "as nearly as practical." *Id.* The road was winding, the terrain mountainous and the weather condition was windy. Under these conditions any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity. The driver may have decided to pull over to check his vehicle and then have a sudden change of mind and pulled back into the traffic lane. Since the movement of the vehicle occurred toward the right shoulder, other traffic was in no danger of collision. These facts lead us to conclude that the single occurrence of moving to the right shoulder of the roadway which was observed by Officer Barney could not constitute a violation of Utah law and therefore does not warrant the

---

**3.** *See* N.M. Stat. Ann. § 66–8–102 (1978), amended by 2000 N.M. Laws, 2d Sess, Ch. 82, making it unlawful for anyone under the influence of intoxicating liquor or under the influence of any drug to a degree that renders him incapable of safely driving a vehicle to drive any vehicle within the state.

invasion of Fourth Amendment protection.

The alternative premise relied upon by the magistrate and district court to justify the stop of defendant's vehicle is Officer Barney's purported reasonable suspicion that the defendant was impaired by alcohol or lack of sleep. In *Botero–Ospina*, we decided that straddling the *center* lane marker of an interstate could constitute an adequate basis to investigate for impairment of the driver due to sleepiness or intoxication. *See also United States v. Lee*, 73 F.3d 1034 (10th Cir.1996).

*United States v. Gregory*, 79 F.3d at 978.

*Gregory* did not establish a bright-line rule regarding what conduct constitutes a violation of statutes like Kan. Stat. Ann. § 8–1522 or the New Mexico statute at issue but highlighted the need to analyze all of the surrounding facts and circumstances to determine whether there was an adequate basis to justify the stop. *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir.1999). Based upon an analysis of the facts and circumstances specific to the case before us, we have on several occasions distinguished *Gregory*. *See United States v. Ozbirn*, 189 F.3d at 1198–99 (officer had probable cause to stop motor home which drifted onto the shoulder twice within a quarter hour under optimal road, weather and traffic conditions); *United States v. Meyer*, 20 Fed.Appx. 808 (10th Cir.2001) (trooper had probable cause to stop vehicle for an observed violation of Kan. Stat. Ann. § 8–1522 after vehicle drifted across the lane twice onto the shoulder in optimal road and weather conditions); *United States v. Asido*, 9 Fed.Appx. 925 (10th Cir.2001) (No. 00–3194) (trooper had sufficient basis to stop vehicle for violating Kan. Stat. Ann. § 8–1522, after vehicle drifted over to the right shoulder then left to where it nearly touched the center line

before straightening out and there were no weather or road conditions that could account for the movement); *United States v. De La Fuente–Ramos*, 242 F.3d 391, 2000 WL 1717186 at *5–6 (10th Cir. Nov.16, 2000) (No. 99–6146 (trooper had reasonable articulable suspicion that the driver was impaired and to stop the vehicle for violating Okla. Stat. tit. 47, § 11–309, requiring that a vehicle be driven "as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety," when the van was observed to weave from the lane line to the shoulder several times, touching the lane line three times), *cert. denied*, 532 U.S. 936, 121 S.Ct. 1391, 149 L.Ed.2d 314 (2001); *United States v. Dunn*, 1998 WL 8227 at *1–2 (10th Cir. 1998) (No. 97–3028) (trooper had probable cause to stop sedan which swerved once over solid line marking edge of lane on straight highway with slight grade for a violation of Kan. Stat. Ann. § 8–1522), *cert. denied*, 523 U.S. 1132, 118 S.Ct. 1825, 140 L.Ed.2d 961 (1998).

Law enforcement officers may search a vehicle without a warrant and in the absence of exigent circumstances if there is probable cause to believe that the vehicle contains narcotics. *Florida v. White*, 526 U.S. 559, 563–64, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999); *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir.1993). A canine sniff on the outside of a vehicle located in a public place is not a search within the meaning of the Fourth Amendment. *United States. v. Morales–Zamora*, 914 F.2d 200, 203 (10th Cir.1990). A dog's alert on a vehicle indicating that narcotics are inside establishes probable cause to search the vehicle's contents. *See United States v. Ludwig*, 10 F.3d at 1527–28. *See also Morales–Zamora*, 914 F.2d at 205. Once Officer Troublefield's

canine, Sir, who was trained to detect narcotics, including methamphetamine, alerted on the rear of the van while Officer Troublefield ran the dog around the outside of the van in a canine sniff, Deputy Menefee and Officer Troublefield had probable cause to search the van without a warrant and consent to search the van was unnecessary. The district court did not err in finding that the officer had probable cause to search the van once Sir had alerted to the rear of the van. Accordingly, the search of the vehicle did not violate the Fourth Amendment[4] and the district court properly denied the motion to suppress evidence obtained as a result of the search. It is thus unnecessary for the Court to address the issue of the validity of Defendant's consent to search the van. However, because Defendant has raised that issue on appeal, we will nevertheless address it.

Defendant suggests that his consent to search the van was not voluntary because it was obtained only a few minutes after an illegal stop, citing, *inter alia, United States v. Gregory,* 79 F.3d at 979–80 and *United States v. McSwain,* 29 F.3d 558, 563 (10th Cir.1994). Because the traffic stop was not unlawful, the temporal proximity between Defendant's consent and the stop does not render Defendant's consent involuntary. The district court implicitly found that Defendant had voluntarily consented to the search of the van. This Court finds no clear error in the district court's implicit finding.

Whether a consent to search which does not follow a Fourth Amendment violation is voluntary is a question of fact to be determined from the totality of the circumstances. *United States v. Hernandez,* 93 F.3d 1493, 1500 (10th Cir.1996). In determining voluntariness of a consent to search, we consider whether the consent was "unequivocal and specific and freely and intelligently given" and whether it was given without implied or express duress or coercion. *United States v. Angulo-Fernandez,* 53 F.3d 1177, 1180 (10th Cir.1995). Defendant's argument on appeal that his consent was not voluntary but a product of duress or coercion is based upon statements to him by Deputy Menefee and the surrounding circumstances. The statements of Deputy Menefee which Defendant asserts were coercive were that probable cause to search the van existed and that if the consent-to-search form was not signed, everyone would be asked to get out of the van, the van would be secured and everyone would have to stay there until a search warrant had been obtained. The circumstances that constituted duress were the prospect of Defendant, his wife and children having to remain on the side of the highway in the dark, early morning hour, with no bathroom facilities, until a search warrant was obtained.

■ Defendant signed a written consent form consenting to the search of the van and all its contents. The consent form informed the Defendant that he did not have to sign the form and that anything found in the van could be used against him in court. Although Defendant may not have read the form before signing it, he was within hearing distance when Deputy Menefee read aloud the form to Mr. Burns. While Defendant was detained at the time, detention is only a factor to be considered in determining whether consent was freely and intelligently given; it is not determinative. *E.g., United States v. Nicholson,* 983 F.2d 983, 988 (10th Cir.1993).

In determining whether consent to search was free from coercion, a court should consider, inter alia, physical mistreatment, use of violence, threats,

---

**4.** Defendant does not challenge on appeal the scope of the search.

threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances.

> *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir.), *cert. denied*, 525 U.S. 903, 119 S.Ct. 236, 142 L.Ed.2d 194 (1998).

There was no testimony that Deputy Menefee or any other law enforcement officer present threatened Defendant, used a hostile or threatening tone of voice, touched Defendant or his family, tricked or deceived Defendant or displayed his weapon. *See United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir.1996). Deputy Menefee's statements that the dog had alerted and that the officers had probable cause to search the van based upon the alert were truthful. Deputy Menefee's statement as to what would occur if the consent form was not signed was made in response to Mr. Burns' question in that regard. As such, the statement cannot be viewed as impliedly coercive; it was merely responsive to Mr. Burns' question.[5] Considering the totality of the circumstances, Defendant's consent to search the van and its contents was unequivocal and specific, freely and intelligently given and not a result of duress or coercion and therefore voluntary. The district court's finding that Defendant's consent to search was valid and implicit finding that that consent was voluntary were not clearly erroneous.

Defendant Herrell requested that the court give a lesser included simple possession instruction with respect to Count III of the Indictment which charged Defendant with possession with intent to distribute methamphetamine. Simple possession is a lesser included offense of possession with intent to distribute. *See United States v. Pena*, 930 F.2d 1486, 1493 (10th Cir.1991). The district court refused to instruct the jury on the lesser included offense of possession. Following his conviction, the Defendant moved for a new trial based upon the trial court's failure to give the lesser included offense instruction. The district court denied Defendant's motion.

■ We review the district court's refusal to give a particular jury instruction for an abuse of discretion. *United States v. Beers*, 189 F.3d 1297, 1300 (10th Cir. 1999), *cert. denied*, 529 U.S. 1077, 120 S.Ct. 1696, 146 L.Ed.2d 501 (2000); *United States v. Duran*, 127 F.3d 911, 914–15 (10th Cir.1997), *cert. denied*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998). The focus of our review is narrow: "Whether there is any evidence fairly tending to bear on the lesser included offense," *United States v. Humphrey*, 208 F.3d at 1190, 1206 (10th Cir.2000), such that a jury could rationally find the defendant guilty of the lesser offense and acquit him of the greater. *See United States v. Duran*, 127 F.3d at 914–15. *Accord Beck v. Alabama*, 447 U.S. 625, 635, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). If there is evidence from which a jury could rationally find a defendant guilty of the lesser included offense and acquit of the greater, a defendant is entitled to an instruction on the lesser included offense, "however weak that evidence may be." *United States v.*

---

5. Because there was probable cause to search the van without a warrant based upon the canine alert, Deputy Menefee's statement that Defendant and the other occupants would have to remain on the side of the highway until a search warrant had been obtained was not legally accurate. However, there is no evidence before the Court that Deputy Menefee knew that a search warrant was not required in the absence of consent to search or that his statement was intentionally deceptive or made for the purpose of inducing Mr. Burns or Defendant to sign the consent form.

*Humphrey,* 208 F.3d at 1207–08, *quoting United States v. Thornton,* 746 F.2d 39, 47 (D.C.Cir.1984).

■ Contrary to Defendant's assertions, no evidence was introduced at trial that controverted Defendant Herrell's own admissions before trial that he intended to share the methamphetamine in his possession with friends in Atlanta. In an interview of Defendant by Agent Randy Pitts, a narcotics agent with the Pecos Valley Drug Task Force, on the early morning of July 15, 1998, a tape-recording of which was played for the jury and a redacted transcript of which was given to jurors and admitted into evidence, Defendant Herrell admitted that the methamphetamine found in his wife's purse belonged to Defendant; that he, his wife, and Bill Burns were going to be using the methamphetamine found in his wife's purse; that Defendant was planning on giving some of the methamphetamine away to his friends that he was going to party with in Atlanta, including his friend David, David's wife and two of David's wife's sisters; that Defendant and Bill Burns had already used some of the methamphetamine before they left on the trip to Atlanta; and that Defendant couldn't pass a lie detector test saying that he didn't intend to give away some of "this dope," i.e., the methamphetamine found in April Herrell's purse. Given these uncontroverted admissions by Defendant, a jury could not rationally find Defendant guilty of simple possession of methamphetamine and acquit him of possession with intent to distribute it merely because there was also evidence that Defendant was a methamphetamine user and addict and did not sell methamphetamine. The element of intent to distribute, the element not included in the lesser included offense of possession, was not a matter in dispute on this record. *See United States v. Duran,* 127 F.3d at 914–15 (four-part test to determine when a lesser included offense instruction must be given). Defendant argues on appeal as he did below that because there was evidence that Defendant did not sell methamphetamine and that the methamphetamine found during the search was for his personal use that a jury could have convicted him of simple possession. The district court rejected that argument, stating as follows:

Defendant's entire argument is based on a statement he gave to an investigating officer shortly after he was arrested. According to Defendant, on at least seven or eight occasions while he was giving his statement, he claimed the methamphetamine was for his personal use. However, in the same statement, Defendant admitted he had already given some of the methamphetamine to his wife and to another co-defendant. He also admitted he was taking the methamphetamine with him on his trip and planned to share it with other friends when he reached his destination. These admissions by Defendant were uncontradicted by any other evidence. For example, Defendant did not first admit having shared the methamphetamine and then deny having done so. If he had, the element of distribution, which distinguishes simple possession from possession with intent to distribute, might have been in dispute. Similarly, no one, including Defendant himself, contradicted his statement that he planned to share the methamphetamine with his friends. Since there was no evidence at all contradicting the facts that one or more acts of distribution had already occurred, and more were planned, the element of distribution was not in dispute in this case.

In addition, given Defendant's statements, the jury could not rationally convict him of possession but acquit him of the distribution charges. To do so, the

jury would have to believe his uncontradicted admission that the methamphetamine belonged to him, but disbelieve his uncontradicted admissions that he had already given some of the methamphetamine to his wife and the other codefendant, and planned to give more of it away in the future. The jury would also have to ignore the portions of his statement in which he argued he was not a drug dealer, because he did not sell the methamphetamine but merely gave it away. It is clear from reading the statement that Defendant's version of "personal use" is not that he planned to use all the methamphetamine himself, but that he planned to use it by partying with friends and sharing the drug with them. Any other interpretation would dissect Defendant's statement, tossing out parts of it and accepting parts, without any rational basis for doing so. Such dissection of a single witness's testimony is not a basis for a lesser-included-offense instruction unless there are rational grounds upon which to base the dissection. *See Moore*, 108 F.3d at 273–74. There was no contradictory evidence in this case that might have provided rational grounds for such dissection, and Defendant was therefore not entitled to an instruction on simple possession.

Memorandum Opinion dated March 14, 2000 at pp. 3–5.

We agree. The district court did not abuse its discretion in refusing the request for a lesser included offense instruction.

In his final argument on appeal, Defendant asserts that the district court erred in failing to grant Defendant's request for a downward adjustment at sentencing based upon acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Defendant correctly asserts that the fact that he went to trial does not preclude his receiving an adjust-

ment for acceptance of responsibility. Because Defendant provided statements prior to trial admitting the conduct comprising the offense and at trial only challenged the element of intent and the applicability of the offense charged to his conduct, Defendant asserts, based upon *United States v. Gauvin*, 173 F.3d 798 (10th Cir.), *cert. denied*, 528 U.S. 906, 120 S.Ct. 250, 145 L.Ed.2d 210 (1999), that he was entitled to an adjustment for acceptance of responsibility. This is particularly true, he suggests, in the circumstances herein where the Government would not accept a conditional guilty plea which would have permitted Defendant to preserve for appeal his Fourth Amendment challenge to the stop.

This Court reviews the district court's decision to deny an adjustment for acceptance of responsibility to a defendant who pleads not guilty for clear error. *United States v. Hawley*, 93 F.3d 682, 689 (10th Cir.1996). The decision of the district court "is entitled to great deference on review." U.S.S.G. § 3E1.1, cmt. 1 n. 5. "A district court's determination concerning whether a defendant has accepted responsibility should not be disturbed 'unless it is without foundation.'" *United States v. Lindsay*, 184 F.3d 1138, 1143 (10th Cir.) (quoting *United States v. Amos*, 984 F.2d 1067, 1071–72 (10th Cir.1993)), *cert. denied*, 528 U.S. 981, 120 S.Ct. 438, 145 L.Ed.2d 343 (1999). To receive a sentence reduction for acceptance of responsibility, a defendant has the burden of demonstrating an "affirmative acceptance of personal responsibility for his criminal conduct." *United States v. Eaton*, 260 F.3d 1232, 1237 (10th Cir.2001); *quoting United States v. McAlpine*, 32 F.3d 484, 489 (10th Cir.1994) (quotation omitted). When a defendant puts the government to its burden at trial, a sentencing court's determination of whether a defendant has accepted responsibility is based primarily on a defen-

dant's pretrial statements and conduct. *Id., citing* U.S.S.G. § 3E1.1 cmt. n. 2.

 The district court did not err in refusing to grant a downward adjustment in the offense level for acceptance of responsibility. Defendant never admitted the conduct comprising the offense of conviction, possession with intent to distribute methamphetamine, but falsely or frivolously denied throughout trial and continues to deny on appeal that Defendant intended to distribute the methamphetamine in question, notwithstanding his admissions prior to trial that he intended to share the methamphetamine with others. *See* U.S.S.G. § 3E1.1 cmt. n. 1(a). In denying that he had the intent to distribute methamphetamine, Defendant denied an essential factual element of guilt, which is inconsistent with acceptance of responsibility. *See id.* at cmt. n. 2; *United States v. Jaynes,* 75 F.3d 1493, 1507 (10th Cir.1996) (denial of intent to defraud government was denial of an essential factual element of guilt, inconsistent with acceptance of responsibility); *United States v. Smith,* 40 F.3d 933, 935 (8th Cir.1994); *United States v. Carroll,* 6 F.3d 735, 741–42 (11th Cir.1993), *cert. denied,* 510 U.S. 1183, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994); *United States v. Gordon,* 895 F.2d 932, 936 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); *United States v. McNeal,* 29 Fed.Appx. 377 (7th Cir.2002) (No. 00–4005).

In *United States v. Gauvin,* 173 F.3d 798, the defendant had never admitted conduct legally inconsistent with disputing the intent required for the offense of conviction, unlike Defendant Herrell herein. The defendant in *Gauvin* admitted all the conduct with which he was charged but "simply disputed whether his acknowledged factual state of mind met the legal criteria of intent to harm or cause apprehension." 173 F.3d at 806. Moreover, this Court in *Gauvin* pointed out that it "might not have reached the same decision" that the district court reached on the issue of whether defendant had accepted responsibility, 173 F.3d at 806, but held that the district court did not err in granting a downward adjustment for acceptance of responsibility "in light of the deference afforded the sentencing judge." *Id.* Applying the same deference here, the district court's refusal to grant Defendant Herrell a downward adjustment for acceptance of responsibility was not clear error. *See United States v. Day* 223 F.3d 1225, 1230–31 (10th Cir.2000).

For the foregoing reasons, we AFFIRM the denial of Defendant Herrell's motion to suppress and AFFIRM his conviction and sentence.