**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MICHAEL HARMON,

     Defendant – Appellant,

No. 12-2099

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1-10-cr-01760-JB-1)**
_____

Jerry A. Walz of Walz and Associates, Albuquerque, New Mexico, for Appellant.

Jennifer M. Rozzoni, Assistant United States Attorney, Albuquerque, New Mexico
(Kenneth J. Gonzales, United States Attorney, on the brief) for Appellee.
_____

Before **GORSUCH** and **BALDOCK,** Circuit Judges, and **JACKSON**[*]**,** District Judge.
_____

**JACKSON,** District Judge.
_____

---

[*]The Honorable R. Brooke Jackson, United States District Judge for the District of
Colorado, sitting by designation.

## I. INTRODUCTION

Probably most of us have, at some time in our lives, weaved within our lane while driving on the highway. Probably most of us have, at one time or another, crossed the "fog line" separating our lane from the shoulder of the road. This case asks us to decide at what point otherwise ordinary driving errors cross the line into driving that gives law enforcement reasonable suspicion to stop a car for a traffic violation.

Mr. Harmon, the appellant in this case, was driving a car across New Mexico with drugs in his spare tire. After weaving within his lane and crossing the fog line, a police officer decided to stop the car on suspicion of violating a New Mexico statute that requires a driver to stay in his or her lane whenever practical or, alternatively, on suspicion that the driver might have been intoxicated or fatigued. During the traffic stop, the officer discovered the drugs, and Mr. Harmon was arrested and charged with possession with intent to distribute. He moved to suppress the evidence before trial, but the district court denied that motion. On appeal, we are asked to decide, among other things, whether the stop was reasonable under the Fourth Amendment. This court has jurisdiction under 18 U.S.C. § 1291, and we affirm.

## II. FACTS

On a clear, calm morning in May of 2010, Officer Hermilo Lucero of the New Mexico Motor Transportation Police Department was patrolling Interstate 40 in eastern New Mexico when he noticed a silver Dodge Intrepid driven by Michael Harmon. According to Officer Lucero, Mr. Harmon was "weaving within [his] lane," and at one point his front and rear passenger tires "crossed over the outer white line" before coming

2

back into the lane. Vol. III, DNM 9-10. Officer Lucero did not regard this movement as unsafe. He did, however, think touching the fog line violated N.M. Stat. Ann. § 66-7-317 ("lane statute"). He also wondered whether the driver was intoxicated or fatigued. Vol. III, DNM 8-9.

Officer Lucero did not pull over the Intrepid at that moment because, as he explained, the two cars were entering a construction zone, and it would not have been safe to stop the vehicle. Instead, he followed Mr. Harmon through the construction zone, two and a half miles, at which point he turned on his lights and initiated a traffic stop. Turning on the emergency lights activated the in-dash video recording system. The resulting video captured the one minute preceding the stop and all events following. During the minute preceding the stop, the video does not show the Intrepid weaving or crossing any lane lines.

Officer Lucero asked Mr. Harmon for his license, registration, and insurance. While standing next to the car, he noticed a "strong odor of air freshener emitting from the vehicle." Vol. III, DNM 14. Air freshener is sometimes used to mask the smell of illegal narcotics in vehicles. *Id.* at 14-15. Officer Lucero then asked Mr. Harmon to walk back with him to his police cruiser where he asked Mr. Harmon if he was tired or had been drinking, apparently receiving satisfactory negative answers. Officer Lucero did not administer any field sobriety tests. He told Mr. Harmon that he stopped him because he

3

had been weaving within the lane and because he crossed the fog line in the construction zone.[1]

Officer Lucero inquired about Mr. Harmon's travel plans, learning that he was driving from Arizona to Michigan to watch his daughter's graduation. He issued a written warning for failing to maintain a lane in violation of N.M. Stat. Ann. § 66-7-317 and told Mr. Harmon he was free to go.

Officer Lucero, however, was uneasy. He thought Mr. Harmon's travel plans seemed odd, and he was suspicious about the strong odor coming from the car. As Mr. Harmon walked back to his car, Officer Lucero called out to him and asked if he would mind answering a few more questions. Mr. Harmon returned to Officer Lucero's cruiser, and Officer Lucero asked if there were any illegal materials in the car. Mr. Harmon said there were not, and he consented to Officer Lucero's request to search the car.[2] The ensuing search revealed packages of marijuana and cocaine hidden in the spare tire.

Mr. Harmon was charged with possession with intent to distribute 500 grams or more of cocaine and possession with intent to distribute 50 kilograms of marijuana. He entered a conditional plea and moved to suppress the evidence uncovered during Officer Lucero's search. At the hearing, Mr. Harmon made several arguments, but we will only

---

[1] The latter explanation was mistaken. Later, Officer Lucero acknowledged that he saw Mr. Harmon cross the fog line before the construction zone. He attributed his misstatement to the fact that he was nervous.

[2] In his briefs to this Court, Mr. Harmon argues that the resulting search exceeded the scope of the traffic stop's underlying justification. However, counsel conceded at oral argument that "it was a consensual search" and that we need not address Mr. Harmon's arguments about the scope of the search exceeding the initial justification. The issue before us is whether the stop was justified, not whether the consensual search that followed was proper.

summarize those that were preserved in his appeal. First, he argued that the traffic stop was not supported by reasonable suspicion of a violation of New Mexico's lane statute. Second, Mr. Harmon challenged Officer Lucero's credibility by pointing to specific instances of Officer Lucero's behavior during the traffic stop.

The District Court denied the motion to suppress. In so doing, it made extensive factual findings. The court found Officer Lucero to be a credible witness. It also found that Mr. Harmon "swerved" before Officer Lucero initiated the traffic stop, although the term "swerve" was actually introduced in the question of an Assistant United States Attorney to which the officer assented. Vol. I, DNM 63; Vol. III, DNM 10. The district court concluded that Officer Lucero had reasonable suspicion that a violation of the lane statute was occurring or that Mr. Harmon was intoxicated or fatigued. Vol. III, DNM 30.[3]

A few months after Mr. Harmon was sentenced he filed motions to withdraw his plea and to reopen the motion to suppress based on information regarding a different traffic stop conducted by Officer Lucero in *United States v. Sheridan,* No. CR 10-0333 JC. Vol. III, DNM 122. Mr. Harmon claimed Officer Lucero's actions in the *Sheridan* case undermine his credibility and provide impeachment evidence that should have been

---

[3] New Mexico's prohibition on driving under the influence is codified at N.M. Stat. § 66-8-102. Mr. Harmon contends that the district court based its conclusion solely on the existence of reasonable suspicion of a violation of the lane statute and not on a reasonable suspicion of driving while impaired. While it is true that the district court concluded its analysis of this issue by pointing to "reasonable suspicion [of] a violation of N.M. Stat. § 66-7-317," Vol. III, DNM 34, the order repeatedly refers to Officer Lucero's suspicion of impairment, Vol. III, DNM 30-31. The district court could have been more explicit in its reliance on the impairment statute, but that reliance is undoubtedly there.

5

disclosed before Mr. Harmon's suppression hearing. Specifically, during this earlier, unrelated traffic stop, Officer Lucero informed the dispatcher that the stop was motivated by a tip from the DEA. He also asked that the dispatcher omit that information from the Computer Aided Dispatch ("CAD") report. Unmoved by this peek behind the law enforcement curtain, the District Court denied Mr. Harmon's motion, finding that this newly uncovered evidence possessed neither exculpatory nor impeachment value, nor was it material to Mr. Harmon's defense. Vol. III, DNM 218.

On appeal to this Court, Mr. Harmon renews his arguments that his motion to suppress ought to have been granted because Officer Lucero lacked sufficient reasonable suspicion to make the initial traffic stop; that the scope of the search exceeded the initial justification for the stop (*but see* n.2 *supra*); that his motion to reopen ought to have been granted in light of Officer Lucero's behavior in the *Sheridan* case; and finally that he received ineffective assistance of counsel in entering into his plea agreement.

### III. DISCUSSION

#### A. <u>Reasonable Suspicion for the Stop</u>

Here, the district court found two potential justifications for Officer Lucero's stop of Mr. Harmon: reasonable suspicion of violating the lane statute and reasonable suspicion of driving while intoxicated or fatigued. While we are unable to forecast with certainty how the New Mexico Supreme Court would apply the lane statute in this case, we nonetheless agree that Officer Lucero had reasonable suspicion to stop the vehicle on suspicion of impairment under New Mexico law.

6

In reviewing a district court's denial of a motion to suppress evidence, we apply two standards of review. The district court's factual findings receive clear error review. In light of those facts, we review the reasonableness of the underlying seizure de novo. *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (quoting *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008)). We review the evidence in the light most favorable to the government. *Id.*

A traffic stop is a seizure for purposes of Fourth Amendment analysis, *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005), and the "reasonable suspicion" standard from *Terry v. Ohio* applies. *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). An investigatory stop "is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." *McHugh*, 639 F.3d at 1255. We look to the totality of circumstances to determine whether reasonable suspicion exists. *Id.* at 1256. This is an objective inquiry, and an officer's subjective motivation for the stop "play[s] no role in ordinary [reasonable suspicion] Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Botero-Ospina*, 71 F.3d at 787.

In applying these standards, we defer to the reasonable inferences of law enforcement officers. *Winder*, 557 F.3d at 1133. Generally an officer's reasonable mistake of fact may support a finding of reasonable suspicion whereas a mistake of law usually cannot support such a finding. *United States v. Orduna-Martinez*, 561 F.3d 1134, 1137 (10th Cir. 2009); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005)

7

("we have also held that failure to understand the law by the very person charged with enforcing it is not objectively reasonable").

According to the district court and the government in its appeal, Officer Lucero had reasonable suspicion that Mr. Harmon violated N.M. Stat. Ann. § 66-7-317 or of driving while impaired when the tires of Mr. Harmon's car crossed the white fog line that separates the right lane of the interstate from the shoulder. The statute states in part that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.M. Stat. Ann. § 66-7-317. At the time of the suppression hearing, New Mexico's state courts had not authoritatively interpreted this statute. As a result, it was an open question whether crossing the white fog line a single time when accompanied by weaving within the lane constituted a violation of the statute or could give rise to a reasonable suspicion of a violation of the statute.[4]

In the absence of a state court case interpreting the relevant state law, federal courts must predict how the state court would interpret the statute in light of existing state court opinions, comparable statutes, and decisions from other jurisdictions. *United States v. DeGasso*, 369 F.3d 1139, 1145-46 (10th Cir. 2004). A district court's statutory construction of a state traffic law receives de novo review on appeal. *United States v. Valadez-Valadez*, 525 F.3d 987, 991 (10th Cir. 2008) (citing *DeGasso*, 369 F.3d at 1144).

To resolve the question of how the New Mexico Supreme Court would apply this statute to Mr. Harmon's case, the district court examined two unpublished decisions from

---

[4] This is still, to our knowledge, an open question in New Mexico.

8

the Tenth Circuit that interpreted N.M. Stat. Ann. § 66-7-317. Both cases ultimately

concluded that when officers observe a car crossing the lane line and also observe other

behaviors that could indicate the driver might be unsafely operating a vehicle, then there

is reasonable suspicion of a violation of the statute. *United States v. Bassols*, 775 F.

Supp. 2d 1293 (10th Cir. 2011) (holding that an officer had reasonable suspicion to stop a

van that veered back and forth multiple times between the fog line and the center line,

crossing the fog line at least once in the process); *United States v. Herrell*, 41 F. App'x

224 (10th Cir. 2002) (holding that officers had reasonable suspicion of a violation of the

lane statute or of driving while impaired where a van twice crossed the centerline for no

apparent reason).

On appeal, Mr. Harmon points us to several unpublished cases from the New

Mexico Court of Appeals applying the statute.[5] In the first, *City of Farmington v.

Fordyce*, No. 30,638, 2011 WL 6016937 (N.M. Ct. App. Nov. 21, 2011), an officer

observed a pickup truck swing wide during a right turn, crossing the center line in the

process. Believing the driver to have violated N.M. Stat. Ann. § 66-7-317, the officer

stopped the pickup, during which he discovered that the driver was intoxicated. The New

Mexico Court of Appeals held that "the plain language of the statute does not make

touching or crossing the center line a per se violation of the statute." *Id.* at *3. Indeed,

---

[5] Mr. Harmon identified two cases, and we note that a third, *State v. Lucero*, No. 31,932, 2013 WL 4516412, (N.M. Ct. App. Feb. 26, 2013), was released more recently. Because these are not intervening decisions from the New Mexico Supreme Court, we examine these cases merely for their persuasive value. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (noting that a federal court must look to "recent decisions of the state's highest court" when interpreting state law) (quoting *Huddleson v. Dwyer*, 322 U.S. 232, 236 (1944)).

9

the court went on to rule that "the officer had reasonable suspicion for the stop only if the turn was unsafe and maintaining the line was practicable, or Defendant was otherwise engaged in erratic driving that needed further investigation." *Fordyce*, 2011 WL 6016937, at \*4. Because those other circumstances requiring further investigation were not present, the court concluded that the officer lacked reasonable suspicion to make the stop. The driver in *Fordyce* was not, however, also weaving.

In the second case, *New Mexico v. Jamon*, No. 31,578, 2012 WL 2890685 (N.M. Ct. App. June 5, 2012), an officer observed a car cross over the center line, veer back to touch the shoulder line, and then veer towards the center and back to the shoulder again. The New Mexico Court of Appeals held that while Mr. Jamon could not be convicted of violating N.M. Stat. Ann. § 66-7-317 under those facts, his driving did generate reasonable suspicion that he violated the lane statute or was driving under the influence. The Court of Appeals rejected Mr. Jamon's argument that reasonable suspicion for a violation of the statute only arises where the driving creates a danger.

Finally, in the latest case, *State v. Lucero*, No. 31,932, 2013 WL 4516412 (N.M. Ct. App. Feb. 26, 2013), the New Mexico Court of Appeals found no reasonable suspicion of a lane statute violation where a driver's tires crossed the fog line three times and touched it an additional two times over a two and one half mile span but there was no traffic near the vehicle. *Id.* at \*3 (citing *Archibeque v. Homrich*, 543 P.2d 820, 825 (N.M. 1975) (holding that the purpose of the lane maintenance statute is to protect the motoring public from "head-on collisions or sideswiping" oncoming traffic)). This arguably is inconsistent with the holding in *Jamon* which suggested that a car leaving its

10

lane without an obvious reason could give rise to reasonable suspicion of a violation of the lane statute. *Lucero* is notable, however, for at least one distinguishing fact. Although the officer testified at the suppression hearing that the line crossings raised a concern about impairment, the state did not address or argue that the possibility of impairment was a basis for the stop. The state did raise the impairment issue on appeal. The appellate panel acknowledged that the officer's testimony potentially could support a stop based upon reasonable suspicion of violating statutes prohibiting careless driving and driving while impaired, but the state had not preserved that argument for appeal. *Id.* Here, by contrast, the potential justification of suspicion of impairment was a basis of the district court's order.

*Lucero*, in particular, seems to be at odds with the other cases from the Tenth Circuit and the New Mexico Court of Appeals on the issue of what constitutes reasonable suspicion for violation of the lane statute. That case, while it involved multiple crossings of the lane line, indicates that such behavior does not create a reasonable suspicion of violation of the lane statute. Moreover, it explicitly distinguishes *Jamon* as a case involving reasonable suspicion of impairment, notwithstanding the fact that the *Jamon* court held that multiple line crosses and weaving constituted reasonable suspicion of *both* a violation of the lane statute *and* driving while impaired or fatigued. This apparent disagreement muddies the waters regarding how the New Mexico Supreme Court would apply the statute in this case.

But luckily, we are not required to wade into that muddy water because we conclude that under the facts of the instant case, Officer Lucero could have had a

11

reasonable suspicion of impairment, and the district court included this justification in its ruling. *See, e.g.*, *Herrell*, 41 F. App'x at 230. We take it as factual that the officer observed the vehicle weaving and, in one instance, crossing the fog line with the front and rear passenger wheels. We also note that there is no evidence in the record indicating difficult driving conditions or adverse weather that could have explained Mr. Harmon's driving errors. *Cf. United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996) (holding that a single isolated instance of a vehicle moving into the emergency lane on a mountain road in windy conditions does not raise a reasonable suspicion of violating Utah's identical lane statute). The combination of these facts justifies a stop based on concern of impairment under New Mexico law.

## B.      Scope of the Search

Mr. Harmon argues in his brief that Officer Lucero's investigatory stop exceeded the scope of the initial justification, thereby violating the Fourth Amendment and entitling him to suppression of the drugs discovered in the Intrepid. Not only must the initial stop be justified, but the scope of the resulting detention must remain reasonably related to the initial justification. *Botero-Ospina*, 71 F.3d at 783; *United States v. Gonzales-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994) (holding that the officer may request documents, run a computer check, and issue a citation before releasing the detainee) (overruled on other grounds). Therefore once the officer has satisfied his initial reasonable suspicions, "unless the officer obtains 'a new and independent basis' for suspecting the detained individual of criminal activity, his investigation must end."

12

*Winder*, 557 F.3d at 1135 (quoting *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993)).

However, as indicated above at note 2, counsel conceded during oral argument that the search was consensual. An officer may continue questioning the driver if the stop has transitioned from a detention to a consensual encounter. *Id.* (citing *United States v. DeWitt*, 946 F.2d 1497, 1502 (10th Cir. 1991).

**C.** **Motion to Reopen and Reconsider the Motion to Suppress**

Mr. Harmon also contends that the district court improperly denied his motion to reopen and reconsider the previous denial of the motion to suppress. In that motion, he renewed his arguments about the lack of reasonable suspicion for the stop. He also claimed that evidence regarding Officer Lucero's communications with dispatch in an unrelated case constituted impeachment material that should have been disclosed prior to the suppression hearing. We review the denial of a motion to reopen for abuse of discretion. *United States v. Wiseman*, 172 F.3d 1196, 1207-08 (10th Cir. 1999).

As a foundational matter, due process requires that the prosecution disclose any evidence favorable to the defendant and material to his or her guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is considered "material" for *Brady* purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence bearing on a witness's credibility may be material in some cases. *Giglio v. United States*, 405 U.S. 150, 154 (1972)

13

("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule.") (quotation marks omitted).

Because the district court relied on Officer Lucero's credibility in determining the reasonableness of the search and denying the suppression motion, Mr. Harmon believes evidence from the *Sheridan* case would have potentially changed the outcome of that proceeding and thus, it was required to be disclosed under *Bagley* and *Brady*. Specifically, Mr. Harmon believes that "Officer Lucero intentionally placed false information into a police report and allowed another officer to use that same false information in preparation of an affidavit to be filed in court." Appellant Reply Br. 20. His best argument is that Officer Lucero's character for truthfulness is suspect given that he instructed the dispatcher to keep the true motivation for the stop out of the report.

Nevertheless, that argument is unavailing for several reasons. First, we agree with the district court that it appears from the record in *Sheridan* that Officer Lucero did not violate the Fourth Amendment in his search of Mr. Sheridan's car. Vol. I, DNM 259-66. Second, as far as we can tell there is no obligation that the CAD report be exhaustive. No one has provided us any authority to indicate the existence of such an obligation, and in fact, the district court noted at least one case suggesting there is no obligation to be exhaustive. *See United States v. Cannon*, No. IP 05-52-CR-01-T/F, 2006 WL 3206267, at *1 (S.D. Ind. Apr. 7, 2006). Third, law enforcement may at times have legitimate reasons to keep certain information confidential, as in the case of keeping an

investigation secret. *See e.g.*, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 156 (1989).

Thus, we note that Officer Lucero was under no obligation to place every piece of relevant information into the CAD report; he had a valid independent basis for his search of Mr. Sheridan's vehicle; and there were legitimate reasons that he might want to keep confidential the DEA investigation leading to Mr. Sheridan's vehicle. We note as well that there was never any determination in the *Sheridan* case that Officer Lucero had done anything improper. Indeed, although the defendant raised the issue, he later abandoned it. In light of these facts, we cannot see how Officer Lucero's behavior reflects on his "character for truthfulness." Fed. R. Evid. 608(b).[6] *Cf. United States v. Lee Vang Lor*, 706 F.3d 1252 (10th Cir. 2013) (seeing *possible* impeachment material where an arresting officer later, in an unrelated case, affirmatively lied to the dispatcher about the grounds for a stop when no such grounds existed); *United States v. Beltran-Garcia*, 338 F. App'x 765, 771 (10th Cir. 2009) (finding impeachment value in evidence of a testifying officer's prior misconduct in 1) misrepresenting the extent of consent given to search a house and 2) omissions in the officer's reports of material facts).

We therefore conclude that the district court did not abuse its discretion in deciding that the evidence did not possess impeachment value and was unlikely to change the outcome of the suppression hearing—a conclusion bolstered by the district court's

---

[6] We recognize that the Federal Rules of Evidence do not apply to suppression hearings. *See* Fed. R. Evid. 104(a). However, like the district court, we believe the standards governing impeachment can help frame how much weight to give this purported impeachment evidence from *Sheridan*.

own explanation that the evidence did not change its mind about Officer Lucero's credibility. Vol. I, DNM 270-71. We can find no clear error requiring us to reverse the district court's denial of the motion to reopen.

### D.      Ineffective Assistance of Counsel

Mr. Harmon's argument is essentially that his original attorney should not have counseled him to enter the plea agreement and failed to perform due diligence in investigating the facts surrounding the traffic stop. We review these claims de novo. *United States v. Prows*, 118 F.3d 686, 691 (10th Cir. 1997).

Claims of ineffective assistance of counsel should normally be brought in collateral proceedings in order to fully develop a factual record for review. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). In fact, when these claims are brought on direct appeal they are "presumptively dismissible." *Id.* Exception will be made for those "rare cases" needing "no further development." *Id.*

This is not one of those rare cases. We have before us no opinion from the district court on the performance of Mr. Harmon's attorneys, nor do we possess many of the facts we would need in order to determine whether the attorneys were deficient and whether that deficient performance prejudiced Mr. Harmon. We have nothing more than Mr. Harmon's assertions. As a result, we reject Mr. Harmon's claims regarding ineffective assistance of counsel.

### IV. CONCLUSION

This is a close and difficult case. However, in light of the district court's factual findings, we predict that the New Mexico Supreme Court would probably find that

16

Officer Lucero had reasonable suspicion to stop Mr. Harmon for driving while impaired in violation of New Mexico law. The judgments of the district court denying the motion to suppress and motion to reopen are affirmed.