ALICE M. BATCHELDER, Circuit Judge,
dissenting.
Defendants appeal the district court’s denial of their qualified immunity defense *851 as asserted in their renewed motion for judgment as a matter of law, and we must determine whether they are entitled to qualified immunity, and therefore to judgment. See Ortiz v. Jordan, 562 U.S. 180, 131 S.Ct. 884, 888-89, 892, 178 L.Ed.2d 703 (2011) (holding that a defendant may not appeal an order denying summary judgment on qualified immunity grounds after a full trial on the merits, but a defendant may appeal the denial of a renewed motion for judgment as a matter of law on qualified immunity grounds). To determine if a defendant is entitled to qualified immunity, we ask whether the facts alleged and the evidence produced, when viewed in a light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right and (2) the right was clearly established. Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir.2008). Because it is not clearly established that “engaging in activities that [are] unrelated to securing the area for medical personnel” is tantamount to deliberate indifference, as the majority opinion suggests, I must dissent here.
For a constitutional right to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Although a pretrial detainee’s constitutional right to adequate medical care is clearly established, Ford v. Cnty. of Grand Traverse, 535 F.3d 483, 495 (6th Cir.2008), a pretrial detainee does not have a clearly established constitutional right to medical care that is administered without any delay. Rather, we have defined “adequate medical care,” in this context, as care that that has not been unreasonably delayed. See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 539-43 (6th Cir.2008); Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 601-03 (6th Cir.2005); Comstock v. McCrary, 273 F.3d 693, 703, 706 (6th Cir.2001); see also Hubbard v. Gross, 199 Fed.Appx. 433, 437-38 (6th Cir.2006).
In this case, to determine whether Defendants unreasonably delayed Scozzari’s medical care, we ultimately must decide whether Defendants’ actions were arbitrary. See Hunt, 542 F.3d at 535-36.[1] Because the majority opinion does not address arbitrariness, it is necessary to outline it thoroughly here. Although arbitrariness may seem to be a broad concept, in this context arbitrary conduct is only that which “shocks the conscience”; and “[deliberate indifference that shocks in one environment may not be so patently egregious in another.... ” Id. at 535. “[W]hen executive action is worse than negligent but was not done for the purpose of injuring someone or in furtherance of invidious discrimination,” we should consider: (1) the voluntariness of the relationship between the government and the injured person, (2) whether the government actor was required to act quickly or had time for deliberation, and (3) whether the *852 government actor pursued a legitimate governmental purpose. Id. at 536.[2]
Our analysis of the latter two factors in Hunt, 542 F.3d at 539-43, is instructive. Relying on County of Sacramento v. Lewis, 523 U.S. 833, 851-54, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), we held that “conduct that might offend ... may still not be considered arbitrary if it was undertaken for a legitimate governmental purpose in a crisis requiring immediate response.” Hunt, 542 F.3d at 540. Government officials face a higher standard if they have time to deliberate their course of action, instead of being forced to act instantaneously. Id. at 539. But if they are reacting to an emergency, any indifference on their part generally is not conscience-shocking due to the importance of competing obligations and the necessity of giving deference to decisions made in haste. Id. at 540.
Moreover, if a government official’s actions arise out of his “attempt to discharge duties which [he] is required by law or public necessity to undertake,” his actions generally cannot be considered arbitrary, even if the official “was imprudent in choosing one legitimate goal over another.” Id. For example, in Ewolski v. City of Brunswick, 287 F.3d 492, 513-16 (6th Cir.2002), we held that police were not deliberately indifferent when they chose to intervene aggressively in a hostage-taking crisis, rather than choosing to continue their stand-off, even though the choice resulted in the death of one of the hostages. Even if the police “made a bad choice, [their] action ... did not shock the conscience” because they faced competing legitimate objectives. Hunt, 542 F.3d at 541. This analysis is consistent with Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), which defined deliberate indifference as “excessive risk,” thus indicating that the risk taken must be balanced against countervailing considerations. See id. “For [us] to find deliberate indifference, therefore, [we] must find not only that the governmental actor chose to act (or failed to act) despite a subjective awareness of substantial risk of serious injury, but ... also ... that he did not act in furtherance of a countervailing governmental purpose that justified taking that risk.” Id. And a countervailing governmental purpose is generally (1) any legitimate police duty or (2) any act that, if not performed, could expose a governmental actor to liability. See id. at 542-43.
Here, Defendants were forced to act quickly to perform countervailing governmental purposes. Their police duties required that they do several distinct things: (1) seek medical care for Scozzari, (2) secure the scene, and (3) gather witness *853 testimony.[3] Numerous witnesses testified that, immediately following the shooting, Officer Miedzianowski radioed for help, saying that shots were fired and the suspect was down. Paramedic Winnie Bryans and Clare County Deputy Kyle Kehn testified that Officer Miedzianowski’s instruction to stage emergency responders until the scene was secure was standard procedure. And this record, viewed in a light most favorable to Plaintiff, clearly shows that MMR was staged for no longer than two minutes. While Defendants waited for MMR to arrive, they gathered witness impressions and attempted to secure the scene by taking the weapons from Scozzari’s hands and handcuffing him. According to the record, both actions were taken and completed in less than nine minutes[4]; and during seven to eight of those minutes, MMR was traveling to the scene, parking the ambulance, unloading their equipment, and walking 75 to 200 feet to Scozzari.
To the extent that the majority opinion suggests that these actions were not performed quickly enough or that Defendants failed to adequately secure the scene, which resulted in delays, such delays cannot amount to recklessness, but at most, only negligence. See S.L. ex rel. K.L. v. Pierce Twnp. Bd. of Trustees, 509 Fed.Appx. 536, 539 (6th Cir.2013) (“Recklessness is a perverse disregard of a known risk.”); Mullins v. Goodyear Tire & Rubber Co., 291 Fed.Appx. 744, 747 (6th Cir.2008) (“[Njegligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.”). Furthermore, although the majority opinion suggests that Defendants should not have gathered witness testimony, that action cannot be considered “conscience-shocking” because Defendants faced coun-' tervailing governmental purposes[5] that *854 justified their actions and the risk those actions imposed on Scozzari’s health and safety. See Hunt, 542 F.3d at 541-43.
Thus, although “general statements of law are capable of giving clear and fair warning to officers,” Smith v. Cupp, 430 F.3d 766, 776-77 (6th Cir.2005), the applicable general statements of law here, particularly those found in Hunt, did not give Defendants clear and fair warning that their actions related to their police duties would be tantamount to deliberate indifference. Even though we have not held specifically that gathering witness testimony is a countervailing governmental purpose as defined in Hunt (“competing legitimate governmental purpose”), there is no language in Hunt or its progeny that suggests that such action is not a countervailing governmental purpose; therefore, it is not clearly established that such action always amounts to deliberate indifference. Moreover, based on the application of Hunt to this case, as outlined above, I conclude that Defendants did not violate Scozzari’s due process right to adequate medical care because Defendants were not deliberately indifferent toward Scozzari’s medical condition.
Because neither criterion necessary to defeat qualified immunity has been satisfied here, Defendants are entitled to qualified immunity, and the district court erred by denying this defense and granting a new trial. I would therefore reverse the judgment of the district court and grant Defendants’ renewed motion for judgment as a matter of law.
I respectfully dissent.

. "Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action.... We have emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government,’ whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.... Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense....’ ” Hunt, 542 F.3d at 535 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citations omitted)).

. Unfortunately, the majority opinion in footnote 4 misapplies Hunt's three-factor analysis, and applies a reasonableness test found in Comstock v. McCraiy, 273 F.3d 693, 703, 706 (6th Cir.2001), in which this court stated that a defendant will prevail against a claim of deliberate indifference if he, instead of recklessly disregarding the risk, "reasonably responded to the risk, even if the harm was ultimately not averted.” (internal quotation marks omitted). Although this statement is correct and supports the analysis in Hunt, it does not clearly articulate how we should determine whether a defendant’s response to a known risk is "reasonable.” Indeed, it appears that Hunt expanded Comstock's analysis to clarify the test for "reasonableness” in a situation like the one currently before us. See Hunt, 542 F.3d at 541-42 ("Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), defines deliberate indifference in terms of ‘excessive risk,' indicating that the need for the risk is being balanced against countervailing considerations. Thus, even where the governmental actor is subjectively aware of a substantial risk of serious harm, we will be unlikely to find deliberate indifference if his action was motivated by a countervailing, legitimate governmental purpose.” (citations omitted)). Thus, the analysis in Hunt, not that in Comstock, is the proper analysis to apply here.

. Police officers generally must gather witness testimony to submit accurate police reports. See Austin v. City of Montgomery, 353 Fed.Appx. 188, 189 (11th Cir.2009) ("The unnamed police officer who responded to the scene ... failed to interview witnesses or file a written report ... as required by Alabama Code § 32-10-7.”); United States v. Gauvin, 173 F.3d 798, 803 (10th Cir.1999) (Officer testified "that, in making his reports at the scene ..., he interviews witnesses.”); Weimer v. Schraeder, 952 F.2d 336, 340 n. 6 (10th Cir.1991) (“[T]he police officers at the accident scene had a duty to prepare an accurate accident report including interviews with available witnesses.”). Furthermore, if Defendants had not gathered witness testimony in this case — confirming that Scozzari attempted to attack them with weapons — they still might be subject to liability under Plaintiff’s "excessive force” claim, which alleged that Defendants were in no immediate danger when they shot Scozzari and that they actually attempted to justify their use of force by planting weapons on Scozzari’s body.

. Dispatch was called at 11:27 p.m., and MMR was "at patient” at 11:35 p.m. Even if we choose to discount the MMR report, which recorded the “at patient” time, the CAD Incident Report recorded that MMR was sent in at 11:34:50 p.m. Accepting Officer McGraw’s testimony that Officer Miedzianowski waited one minute before calling dispatch, less than nine minutes transpired between when Scozzari was shot and when MMR was at his side assisting him. Moreover, whether we choose to rely on the MMR report "at scene” time of 11:33 p.m. or the CAD Incident Report “ENTR TO STAGE” time of 11:32:23 p.m., the record clearly shows that MMR was staged for no longer than two minutes.

.In this Court’s prior decision in this case, Scozzari v. Miedzianowski, 454 Fed.Appx. 455, 463, 466 (6th Cir.2012), the majority concluded, based on the evidence available before trial, that a reasonable jury could find that Defendants used excessive force if the evidence at trial revealed that Scozzari did not threaten Defendants with weapons and instead Defendants planted weapons on Scozzari’s body to cover up their use of force. However, due to the evidence revealed-at trial— the evidence that Defendants gathered while waiting for MMR to arrive — a reasonable jury could not find that Defendants used excessive *854 force. Because Defendants' actions therefore were necessary to avoid exposure to liability, Defendants "act[ed] in furtherance of ... countervailing governmental purpose[s].” See Hunt, 542 F.3d at 541.